John C. REEVES, Plaintiff-Appellant,

v.

CITY OF JACKSON, MISSISSIPPI, et al., Defendants-Appellees.

No. 77–1456.

United States Court of Appeals, Fifth Circuit.

Dec. 21, 1979.

William M. Bost, Jr., Vicksburg, Miss., for plaintiff-appellant.

John E. Stone, Jackson, Miss., for defendants-appellees.

Before TUTTLE, TJOFLAT and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

In this diversity and 42 U.S.C. § 1983 (1976) action for false arrest and imprisonment, the district court directed a verdict, at the close of all the evidence, for the City of Jackson, Mississippi and nine City police officers or jailers. While the court was correct in entering judgment for some of the defendants, as to others a jury question was presented. Accordingly, we affirm in part and reverse and remand in part.

**I**

On January 23, 1974, at approximately 9:30 p. m., Officer C. W. Harvey of the Jackson, Mississippi police department dis-covered John C. Reeves slumped over the steering wheel of a Chevrolet automobile that was partially blocking an entrance ramp leading onto Interstate 20. The Chevrolet's engine was running. Reeves was in a semi-conscious state. Harvey called for assistance, and Officer R. A. Johnson soon arrived. Harvey and Johnson helped Reeves from the Chevrolet to Johnson's patrol car, and Johnson transported him to the Jackson City Jail, where Reeves was booked for public intoxication and placed into the drunk tank. The time was 10:30 p. m.

Reeves remained in the drunk tank nineteen and one-half hours. He was observed frequently by jail officials, who checked the drunk tank approximately hourly, and was asked on two occasions by Lt. J. H. Wells, the jail commander, if he was all right or needed anything. While in the jail, Reeves spoke in a slurred fashion, walked in a shuffling manner, had a glassy stare, and frequently slept. He was never given an intoxication test, although an intoximeter was available to jail personnel.

Richard Bodker and Phillip Scheuth, employees of the Illinois Central Gulf Railroad (ICG), Reeves's employer, arrived at the jail around 6:00 o'clock in the evening of January 24. Reeves, who was driving an ICG vehicle at the time of his arrest, had been reported missing by one of his superiors, and Bodker, an ICG security agent, had traced him to the Jackson City Jail. When Bodker and Scheuth addressed Reeves in the drunk tank, both believed that something was wrong with him. They signed for his release from custody and conveyed him to St. Dominic-Jackson Memorial Hospital. During Reeves's release and the drive to the hospital Bodker and Scheuth questioned him, but he did not know where he was and could recognize neither Bodker nor Scheuth, both whom he had known for several years.

When Reeves was examined at the hospital, he was found to have suffered a massive stroke the night before. He was hospitalized for some time, and failed to regain

full cognitive abilities for some six months. Even at trial, Reeves had no memory of anything that occurred between 7:30 p. m. on January 23, 1974, and sometime in July or August 1974. He was compelled by his physical condition to retire from ICG on a disability pension.

In 1975 Reeves brought suit against the City of Jackson, the City's insurer, and the police officers and jailers on both diversity and 42 U.S.C. § 1983 grounds. On October 22, 1975, the district court dismissed the cause with prejudice for failure to state a claim. An appeal was taken, and this court reversed and remanded the case for further proceedings. *Reeves v. City of Jackson*, 532 F.2d 491 (5th Cir. 1976). We held that the complaint stated claims on both diversity and 42 U.S.C. § 1983 grounds and further observed that a 28 U.S.C. § 1331 (1976) federal question claim might also lie. We said:

> [T]he District Court should give the plaintiff the full fanfare of a federal court claim at least until it can see what the real facts are. If, after a full development of the facts the plaintiff's cause is too weak to string the Constitution's bow or unsheath the sword provided for the redress of such grievances under Mississippi law, it may be washed out on summary judgment, or if it gets beyond that, by motion for directed verdict either at the end of the plaintiff's case, or at the close of the evidence, or by J.N.O.V. after verdict.

532 F.2d at 494 (citations omitted).

On remand, the case proceeded to trial. At the close of all the evidence, the district court granted a directed verdict on behalf of all remaining defendants, and Reeves took this appeal. We must now determine whether a case for the jury was presented as to any of the defendants.

## II

■ The standard for district court determination whether a party's evidence is sufficient to defeat a motion for a directed verdict is well-settled in this circuit:

> [T]he Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury . . . .. [I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*King v. Ford Motor Co.*, 597 F.2d 436, 439 (5th Cir. 1979) (quoting *Boeing Co. v. Shipman*, 411 F.3d 365, 374–75 (5th Cir. 1969) (en banc) (footnote omitted)). This standard applies to both federal and diversity claims. *King v. Ford Motor Co.*, 597 F.2d at 439. Thus, Reeves is entitled to a reversal of the directed verdict for a given defendant if the state of the evidence in the court below was such that reasonable men might differ about the facts that gave rise to Reeves's arrest and subsequent incarceration for public drunkenness and the verdict that should result therefrom. As to certain defendants, the evidence was in such a state.

Both Officers Harvey and Johnson testified at trial that when they found, and subsequently arrested, Reeves he was in an intoxicated condition. They stated that Reeves had the Chevrolet's heater turned on full force, causing the vehicle to be extremely warm. They further said that Reeves had both vomited and urinated upon himself and the car, and that he smelled strongly of alcohol. Harvey referred to a stream of mucus flowing from Reeves's nose. The officers claimed that the odor from the vehicle was extremely strong due to the heat and the mixture of alcohol, urine, and vomit inside. When they roused and arrested Reeves, he allegedly cursed at

them and put up some resistance before he was placed in Johnson's patrol car and transported to the jail.

Testimony was offered by Reeves that called many of these statements into question. No one recalled any sign of either urine or vomit on any of Reeves's clothing when he was released from the jail or at any time during his incarceration. There was no evidence that Reeves or anyone else, whether jailer or inmate, had washed his clothing during his stay in the drunk tank, and in light of Reeves's condition during that time, the jury could reasonably have inferred that he was incapable of doing so.[1] When the Chevrolet was recovered by ICG employees from the Jackson police impoundment lot, where it had been taken following Reeves's arrest, there was no sign of vomit or urine and no unusual odor inside. Several police officials testified that the vehicle would not have been cleaned while it was being held. Though medical testimony indicated that it was not improbable that a stroke victim might have vomited and urinated upon himself with the onset of his attack, there was ample reason to disbelieve the testimony of Harvey and Johnson that such was the case when they found Reeves slumped over in the automobile.

More importantly, severe doubt was cast upon the testimony that Harvey and Johnson smelled alcohol when they arrested Reeves. Reeves may have exhibited behavior typical of an inebriant at that time, since he later had the shuffling walk, glassy stare, and slurred speech commonly associated with the pixilated. The arresting officers stated emphatically, however, that he was in fact drunk and that they smelled alcohol when they arrested him. Reeves, who was an ICG trainmaster at the time of his disability and had worked for the railroad for thirty-seven years, testified that on January 23 he was ordered by a superior to drive the ICG Chevrolet from Jackson to another city. He was considered on duty at his job while en route. ICG Rule G required the dismissal of any employee using alcohol, narcotics, or intoxicants while on duty; Reeves testified that he never violated Rule G during his years with the company and did not do so on January 23. A number of ICG employees, some of whom had known Reeves for as long as twenty-six years, testified on his behalf, and they all indicated that the company vigorously enforced Rule G, to their knowledge Reeves had never violated it, and Reeves had a good reputation. Further, a series of witnesses who had seen Reeves on January 23 took the stand and tended to establish that from 2:00 p. m. to 7:30 p. m. he drank no liquor. Thus, while Reeves presented no direct evidence that between 7:30 p. m. (the onset of his amnesia) and 9:30 p. m. (his arrest) he had not imbibed beer or liquor, he did show that prior to that time he was sober, and it could well have been inferred that he continued to be sober afterwards because he was still on duty. This evidence, buttressed by the combined testimony of the jailers and police officers at the impoundment lot that there was no vomit or urine on Reeves's person or in the Chevrolet and that no liquor containers were found, seriously undercut the existence of the odor of alcohol Harvey and Johnson purportedly sensed. In fact, aside from the testimony of these two officers, the evidence at trial was basically undisputed. We shall discuss it as we resolve the substantive legal claims raised by Reeves.

### ■ A. The 42 U.S.C. § 1983 Claim [2]

In order to recover under section 1983, Reeves must have established, as to each

1. Dr. J. Gordon Dees, surgeon for the Louisiana division of the ICG who was the first physician to see Reeves in the emergency room on the evening of January 24, testified that Reeves was in critical condition when he was examined and that he could have died while in the jail.

2. In this court's previous decision in this case, it was observed that the facts pled by Reeves

might give rise to a 28 U.S.C. § 1331 (1976) claim. 532 F.2d at 493. Although Reeves did not include such a cause of action in his original complaint, and never amended it to add one, he now contends that such a claim should be considered by us because of the dictum in the prior decision. We need not decide the issue, however. Because *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct.

individual defendant, that the defendant, acting under color of state law, deprived Reeves of a right, privilege, or immunity "secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. There is no doubt that the police officers and jailers involved in this suit acted in their official capacities when they arrested or confined Reeves. We must determine, however, whether the deprivation of a right secured by the Constitution and laws did occur. If not, a section 1983 suit will not lie. *Baker v. McCollan,* —— U.S. ——, ——, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Reeves alleges he was falsely arrested and imprisoned in violation of his fourteenth amendment liberty interest and was accorded inadequate medical care and treatment in violation of the eighth amendment. We find he did make out a case against Harvey, Johnson, Wells, James Berry, B. E. Appleton, and Mike Dill on the fourteenth and eighth amendment claims.

In its order granting the defendants' motions for a directed verdict, the district court held that the City of Jackson's "non-person" status made it immune from suit; no reasons were given for entering a verdict for the individual defendants. Record at 520. The Supreme Court has now repudiated the doctrine that a municipality is not a "person" under 42 U.S.C. § 1983, *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Consequently, we have in effect a record presenting no articulated bases for the district court's dispositive action. We must, therefore, apply the current section 1983 case law to the facts disclosed at trial in order to determine whether, as to each defendant, a directed verdict was proper.

▮ If the jury resolved the disputed facts most favorably for Reeves, as we must assume that it might do, it would be left with Officer Harvey's discovery of a semi-conscious man, seriously ill and in obvious distress, slumped over the Chevrolet's steering wheel. The jury could have believed Harvey's and Johnson's testimony that they were confronted by a drunk who reeked of alcohol to be a story concocted by them to escape liability. In short, the jury could have reasonably found that the officers had no cause whatever to believe that Reeves was drunk and that they falsely arrested and jailed him for public intoxication. Such a jury finding would have been consistent with one of the jailer's observations that "patrolmen have brought prisoners [to the jail] that obviously were not drunk . . . you wonder why they arrested this man for public drunk . . . inevitably it would be because of something this person said—not abusive language, *not anything that you could make a charge on,* so they say, okay, you're drunk . . . ." 1st Supp. Record at 228 (emphasis added). Reeves's seizure and confinement under these circumstances would fit the requirement that he be deprived of a constitutionally-protected right, since a warrantless and malicious arrest based on no probable cause violates liberty, and hence section 1983. *See Baker v. McCollan,* —— U.S. at ——, 99 S.Ct. at 2694. Reeves produced, in addition, evidence plainly demonstrating a prima facie case of false imprisonment, *see Bryan v. Jones,* 530 F.2d 1210, 1213 (5th Cir.) (en banc), *cert. denied,* 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976), and a jury should decide the matter. Similarly, a jury should determine whether officers Harvey and Johnson exhibited the callous and conscious indifference to Reeves's medical needs that can still give rise to an eighth amendment claim under section 1983 after

2018, 56 L.Ed.2d 611 (1978), abolished municipal immunity from 42 U.S.C. § 1983 (1976) claims, Reeves is entitled to essentially the same relief under section 1983 that he might have obtained under section 1331, since the principles of section 1983 law generally apply to section 1331 actions. *See Bivens v. Six*

*Unknown Named Agents of the Federal Bureau of Narcotics,* 456 F.2d 1339, 1346–47 (2d Cir. 1972). Hence, our discussion of the propriety of the directed verdict on the section 1983 case is equally applicable to any claim under section 1331.

*Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). *See Fielder v. Bosshard,* 590 F.2d 105 (5th Cir. 1979). The officers are, of course, free to assert good faith immunity as a defense to the charges against them, *see, e. g., Pierson v. Ray,* 386 U.S. 547, 555–58, 87 S.Ct. 1213, 1218–19, 18 L.Ed.2d 288 (1967); *Cruz v. Beto,* 603 F.2d 1178, 1182–84 (5th Cir. 1979); *Mundy v. Georgia,* 586 F.2d 507 (5th Cir. 1978) (per curiam), but on the record before us, its validity is a jury question. In this regard, we note that none of the individual defendants raised the immunity defense in the proceedings below, and they have not urged it in this appeal as a ground for affirming the district court.

In *Baker v. McCollan,* the Supreme Court said that "mere detention [in jail] pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.'" —— U.S. at ——, 99 S.Ct. at 2695. In Reeves's case, a jury could have concluded that Reeves was unlawfully arrested, with neither a warrant nor probable cause, and confined for nineteen and one-half hours. We now must determine whether such confinement can be the basis of a section 1983 false imprisonment claim against any of the jailers who held him. We conclude that it can.

■ Reeves, if seriously ill rather than drunk, had a right not to be held in the drunk tank of the Jackson City Jail. He suffered a significant deprivation of his constitutionally protected liberty interest if he was merely sick. Unlike the plaintiff in *Baker,* he was held without any probable cause determination by an impartial magistrate. As we discuss below, a jury might have found that several of the jailers held Reeves in custody on a charge of public intoxication, although they knew he was not intoxicated. We think a section 1983 claim survives against them under the *Baker* standard.

Several witnesses testified that the Jackson City Jail had a policy against releasing one arrested for public drunkenness until he had been incarcerated for five hours. A jury might have determined that this policy was based on an assumption that, after five hours, an arrestee would probably be sufficiently sober to care for himself and not create a danger to others, and that the reason for this policy was known to the jailers. After the five-hour holding period each drunk was examined by a jailer, who determined whether he should be released. He would be kept in custody if he still appeared too intoxicated to be in public. Some inmates had remained under the influence and therefore been detained for as many as ten hours after their arrest.

■ At 9:00 o'clock each morning, the drunk tank was emptied through a general release of prisoners; on January 24, Reeves's name was listed for the 9:00 a. m. release. It was clearly inferable that someone at the jail had checked the jail docket prior to 9:00 o'clock and had discovered that Reeves had been held for at least five hours. Reeves was not released because Lt. Wells, the jail commander, concluded, after examining him, that he was not in a condition to be freed. The jury could have found that Wells knew what the jail docket indicated—Reeves had been in custody since 9:30 o'clock the previous evening when officers Harvey and Johnson had picked him up for public intoxication. If for some reason Wells was unaware that morning of Reeves's serious illness, the jury could have found that Wells became aware of the true facts when he reexamined Reeves at 1:30 o'clock that afternoon, sixteen hours after the arrest. Lt. Wells's decision to continue holding Reeves on the intoxication charge under these circumstances could have been deemed false imprisonment.

■ Jailers Berry and Appleton were on duty when Lt. Wells conducted the morning jail sweep. They had come on duty at 6:00 a. m. and worked until 2:00 that afternoon. They likely participated in the hourly checks of the drunk tank and had access to the jail docket, so a jury could have concluded they knew the same facts about Reeves's confinement as did Wells. Thus,

Berry and Appleton could have been found to have joined in falsely imprisoning Reeves. Jailer Dill was on duty that day from 2:00 p. m. to 10:00 p. m.; consequently, the same jury question was presented as to him. As we have already pointed out, none of these jailers has raised an immunity defense, and we conclude that the record does not establish one as a matter of law.

■■■■ The remaining individual defendants, Robert Gill and Ray Thomas, were on duty at the jail from 10:00 p. m. on January 23 (shortly before Reeves was booked) to 6:00 o'clock the next morning. It is doubtful, at best, that they realized that Reeves should not have been jailed for public intoxication. During Gill's and Thomas's shift, Reeves exhibited many of the characteristics of a drunk, and it was not particularly noteworthy that he was still in the same condition when they went off duty because it often took more than eight and one-half hours (the time that elapsed between Reeves's arrest and the conclusion of their shift) for a drunk to sober up. To hold that a section 1983 claim was made out against these two jailers on these facts could not, we think, be squared with *Baker*, which observed that a defendant's state of mind (here a reasonable belief in the drunkenness of one's prisoner) is relevant to a court's inquiry whether a constitutional violation has occurred. —— U.S. at —— n.1, 99 S.Ct. at 2692.[3] As for defendant G. T. Sumrall, his name was never mentioned at trial. The directed verdict on his behalf on both the section 1983 and diversity counts was, therefore, appropriate due to a total failure of proof.

■■■■ We reach a similar result when we consider the eighth amendment claim against the jailers. Gill, Thomas, and Sum-

rall were entitled to a directed verdict for the reasons we have given in disposing of the false imprisonment count. As for Wells, Berry, Appleton, and Dill, we think the jury could have reasonably concluded that they knew Reeves had remained in the same condition for far in excess of ten hours and was acutely ill, not intoxicated; yet they took no action to help him. A jury might have found such behavior a callous and conscious indifference to an inmate's condition, and hence that the test of *Estelle v. Gamble* was met. *See Dailey v. Byrnes*, 605 F.2d 858, 860–61 (5th Cir. 1979). A directed verdict for them on this issue was improper.

■■■ We are left with Reeves's claim against the City of Jackson. Under *Monell v. Department of Social Services*, the City may not be held liable solely on a respondeat superior theory. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694, 98 S.Ct. at 2038. *See Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Here, we can conceive of several theories which Reeves might propound to make out a section 1983 case against the City under *Monell*,[4] but we find no merit in any of them. There was no evidence that the City either tacitly or explicitly encouraged the improper arrest and detention of stroke victims on charges of public drunkenness. Similarly, nothing was shown to establish that the City was reckless or grossly negligent in its training, supervising, or disciplining of the officers or jailers involved in Reeves's arrest and detention. *See Popow v. City of*

---

3. Were we to hold that Reeves had proved that he was deprived of his constitutional rights by Gill and Thomas, we then would turn to the remaining steps of a section 1983 analysis. *See Baker v. McCollan*, —— U.S. at ——, 99 S.Ct. at 2693. A prima facie case of false imprisonment would be present, *see Bryan v. Jones*, 530 F.2d at 1213, but Gill and Thomas would still escape liability because, we think, a good faith immunity inheres in the record as a matter of

law. *See Cruz v. Beto*, 603 F.2d at 1182–84; *Bogard v. Cook*, 586 F.2d 399 (5th Cir. 1978).

4. Because Reeves's briefs in this appeal were filed prior to the Supreme Court's decision in *Monell* (overruling *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)), he of course did not address the question of the City's potential section 1983 liability under the test set out in that case.

*Margate*, 476 F.Supp. 1237, 1245 (D.N.J. 1979). By Mississippi statute, an intoximeter test must be given to those arrested for driving while intoxicated, Miss.Code Ann. §§ 63–11–1 to 63–11–47 (1972), but it is not required for those arrested merely for public drunkenness. While no Mississippi statute *precludes* the administration of such a test to public drunkenness arrestees, we cannot accept Reeves's argument that the City can be liable for its policy against giving such a test to persons in his situation. "[I]n this circuit the police need not make a sobriety test available at state expense or even inform an arrestee of his right to finance his own." *Scarborough v. Kellum*, 525 F.2d 931, 933 (5th Cir. 1976). There being "no evidence that the City . . . 'acted' through its policies, formally or informally adopted, to deprive [Reeves] of his constitutional rights . . . the action was properly dismissed as to the City." *Reimer v. Short*, 578 F.2d 621, 626 (5th Cir. 1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1425, 59 L.Ed.2d 635 (1979).

### B.   *The Diversity Claims*

Reeves also contends that his common law false arrest and imprisonment claims should have been submitted to the jury. As to Johnson, Harvey, Wells, Berry, Appleton, and Dill, we agree; as to Gill, Thomas, Sumrall, and the City of Jackson, directed verdicts were in order.

■   Since this portion of the appeal concerns diversity claims, Mississippi substantive law controls. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We think it requires no further discussion to hold that under Mississippi law Reeves made out a prima facie case of false arrest and imprisonment against officers Johnson and Harvey. *See State ex rel. Powell v. Moore*, 252 Miss. 471,

475, 174 So.2d 352, 354, 355 (1965). Even if the jury were to find that Reeves was intoxicated and thus subject to arrest, it still would have to consider whether the two officers should respond in damages for violating Miss.Code Ann. § 99–3–17 (1972), which provides that: "Every person making an arrest shall take the offender before the proper officer without unnecessary delay for examination of his case." Mississippi recognizes that unreasonable delay in bringing one lawfully arrested before a committing magistrate can amount to false imprisonment, *State ex rel. Kelley v. Yearwood*, 204 Miss. 181, 37 So.2d 174 (1948) (en banc); *see* 35 C.J.S. *False Imprisonment* §§ 30–31 (1960). We would not disturb a jury finding that, after Reeves had been detained for a time plainly beyond that needed to achieve sobriety, the officers' failure to present him to a magistrate was unreasonable.

■   Turning to the jailers, we conclude, as we did in the section 1983 analysis, that a case of false imprisonment was made against four of them. Mississippi law, we believe, would hold a jailer liable for false imprisonment if he knew or should have known that a prisoner was in his custody in consequence of an illegal arrest, 32 Am. Jur.2d *False Imprisonment* § 31 (1967). We have pointed to evidence from which a jury might conclude that in due time Wells, Appleton, Berry, and Dill realized that the public intoxication charge on which Reeves was being held was invalid, yet failed to release their prisoner. The validity of Reeves's arrest aside, there is a permissible inference that eventually these jailers knew that he was not inebriated but acutely ill; nevertheless, they decided to hold him indefinitely. For such conduct they can be made to respond in damages under Mississippi law.[5]

---

5.   In our view, the language of Miss.Code Ann. § 99–3–17 (1972) would not provide a theory of liability against the jailers. A similar Texas statute, Tex.Crim.Pro.Code Ann. art. 15.17 (Vernon 1977), which this court has extended to jailers as well as arresting officers, *see Perry v. Jones*, 506 F.2d 778, 781 (5th Cir. 1975), requires that the person making the arrest

"shall   .   .   .   take the person arrested *or have him taken* before some magistrate . . . ." (emphasis added). Section 99–3–17 only places a duty on the "person making an arrest," and we have discovered no Mississippi case which extends the duty to a jailer. In both *Sheffield v. Reece*, 201 Miss. 133, 28 So.2d 745 (1947) (en banc), and *State ex rel. Kelley v.*

■ As for Gill, Thomas, and Sumrall, they must be exonerated for essentially the same reasons we upheld the directed verdict for them on the section 1983 count. Gill and Thomas, who were on duty only during the early hours of Reeves's detainment, cannot be charged with knowing that the arresting officers had no basis to haul Reeves off to jail for public intoxication. Besides, the good faith immunity that insulated them from section 1983 liability would protect them under Mississippi law as well. *See Bogard v. Cook,* 586 F.2d 399, 412–15 (5th Cir. 1978); *Forsythe v. Ivey,* 162 Miss. 471, 476, 139 So. 615, 617 (1932). Against Sumrall there was, again, a complete failure of proof.

■ Finally, we consider the respondeat superior diversity claim against the City of Jackson. Under Mississippi law, "[i]n the absence of express statutory authority the city may not be sued for the torts of its police officers committed while engaged solely in matters pertaining to the police powers of the city." *Hamilton v. Chaffin,* 506 F.2d 904, 913 (5th Cir. 1975). *Accord, Burton v. Waller,* 502 F.2d 1261, 1274 (5th Cir. 1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975). The Mississippi Supreme Court continues to reaffirm the existence of this governmental immunity doctrine. *E. g., Davis v. Little,* 362 So.2d 642, 643 (Miss.1978); *Jackson v. Smith,* 309 So.2d 520, 523 (Miss.1975). No statute expressly authorizes suit against the City of Jackson.[6] Hence, the directed verdict for it on the diversity claim was proper.

## III

For the reasons set forth above, the judgment of the district court on the 42 U.S.C. § 1983 and diversity claims is reversed and remanded for further proceedings as to appellants Harvey, Johnson, Wells, Berry, Appleton, and Dill and affirmed as to appellants Gill, Thomas, Sumrall, and the City of Jackson.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

---

*Yearwood* the arresting officer (in *Sheffield* the officer also had custody of the prisoner) was the person against whom an action for unreasonably long detention without arraignment was recognized. We can foresee policy considerations which might weigh both in favor of and against extending section 99–3–17 to jailers, and are reluctant to carry it beyond the scope already accorded it by Mississippi courts. Our decision today is consistent with *Anderson v. Nosser,* 456 F.2d 835, 839 (5th Cir.) (en banc), *cert. denied,* 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972), *modifying* 438 F.2d 183 (5th Cir. 1971), where we adopted an interpretation of the predecessor to section 99–3–17 limiting its application to arresting officers.

**6.** Reeves argues that Miss.Code Ann. § 21–21–11 (1972) constitutes a waiver of statutory immunity that opens the City to suit. He misreads this provision. Section 21–21–11, which was adopted in 1971, 1971 Miss. Laws ch. 376, § 1, authorizes a city to purchase insurance to protect its policemen from suits arising out of their official duties; it does *not* authorize a city to purchase insurance to protect *itself* from vicarious liability for the torts of its officers. Even if it did so, such a provision alone would not suffice to abrogate municipal immunity. *See* Annot., 68 A.L.R.2d 1437, 1439 (1959 & Supp.1978) (collecting cases from various jurisdictions holding that municipality's purchase of liability insurance does not waive governmental immunity).