Earl BERRY, Plaintiff-Appellant,

v.

Jimmy McLEMORE, et al.,
Defendants-Appellees.

No. 81–4106
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 8, 1982.

---

Jim Waide, West Point, Miss., for plaintiff-appellant.

Jan R. Butler, Eupora, Miss., for defendants-appellees.

Before CLARK, Chief Judge, REAVLEY and RANDALL, Circuit Judges.

· CLARK, Chief Judge:

Plaintiff Earl Berry brought this civil rights action in federal district court against the Town of Maben, Mississippi and Jimmy McLemore, a police·officer employed by the Town, for injuries Berry sustained during his arrest by McLemore.

The Town of Maben hired McLemore as a police officer in April 1978, and promoted him to Chief of Police on a probationary basis one year later. Shortly after his promotion, McLemore attempted to make a custodial arrest of Berry for an alleged traffic offense. When Berry protested his innocence, McLemore became angry and hit Berry four or five times about the face. Berry responded by striking the officer, whereupon McLemore pulled his gun and shot Berry through the stomach and arm. As Berry turned and fled, McLemore again fired at him and a ricochet entered the back of Berry's neck.

Following the shooting incident, Maben's mayor asked the sheriff of a neighboring county to conduct an investigation. Upon completing his investigation, the sheriff recommended that no disciplinary action be taken against McLemore. The Town followed this recommendation.

In January 1980 Berry brought suit both under 42 U.S.C. § 1983 and directly under the Constitution, alleging that McLemore was liable to him for violating his constitutional rights, and that the Town of Maben was also liable both vicariously and directly for the constitutional deprivations perpetrated by McLemore. Berry's claims against McLemore and the Town were tried before a jury. At the conclusion of plaintiff's case, the district court directed a verdict in favor of the Town. The jury returned a verdict against McLemore in the amount of $5,000 compensatory damages and $5,000 punitive damages, and the court entered judgment accordingly. The court assessed McLemore, but not the Town, $5,000 for Berry's attorneys' fees and disallowed as an item of costs the $750 fee of an expert medical witness who testified on Berry's behalf.

On appeal, Berry asserts that the district court erred: (1) in failing to hold the Town of Maben liable for the acts of McLemore on Berry's implied cause of action under the Constitution; (2) in directing a verdict in favor of the Town with respect to the Town's direct liability under § 1983; (3) in failing to hold the Town liable for Berry's attorneys' fees; and (4) in failing to hold McLemore and the Town liable for Berry's expert witness fee.

## I.

Berry concedes that a municipality may not be held liable on a respondeat superior basis in an action brought under 42 U.S.C. § 1983. *Monell v. Department of Social Services*, 436 U.S. 650, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Berry nevertheless argues that the question remains open whether a municipality may be held liable on a respondeat superior basis in an action brought directly under the Constitution. In fact, the Fifth Circuit has answered this question in the negative. *Dean v. Gladney*, 621 F.2d 1331, 1334–37 (5th Cir. 1980), *cert. denied*, 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981). The Town of Maben may not be held vicariously liable for McLemore's violation of Berry's constitutional rights.

## II.

Berry next claims that the district court erred in directing a verdict in favor of the Town with respect to the Town's direct liability under § 1983. In *Monell v. Department of Social Services*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36, the Supreme Court held that a municipality may be sued for damages under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decisionmaking channels." Thus, *Monell* imposes liability on municipalities for deprivations of constitu-

tional rights undertaken pursuant to municipal policy, whether officially promulgated or authorized by custom.

Berry concedes that Maben has officially promulgated no policy statement, ordinance, regulation or decision authorizing or encouraging police officers to use excessive force in making arrests. Moreover, Berry presented no evidence at trial that excessive use of force by Maben's police officers is so customary as to indicate the existence of an unarticulated municipal policy authorizing or encouraging such use. The sole instance of misconduct by Maben police officers revealed in the record is McLemore's improper arrest of Berry. Such an isolated instance of police misconduct does not indicate the kind of systematic, municipally-supported abuse to which *Monell* makes reference. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970) (custom denotes "persistent and widespread . . . practices"); *Knight v. Carlson*, 478 F.Supp. 55, 58 (E.D.Cal.1979) (custom denotes "settled governmental practice or '[d]eeply embedded traditional ways of carrying out [government] policy'") (*quoting Nashville, Chattanooga & St. Louis Railway v. Browning*, 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1954). *See also Landrigan v. City of Warwick*, 628 F.2d 736, 746–47 (1st Cir. 1980); *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Hamrick v. Lewis*, 515 F.Supp. 983, 986 (N.D.Ill.1981); *Gomez v. City of West Chicago*, 506 F.Supp. 1241, 1245 (N.D.Ill.1981); *Magayanes v. City of Chicago*, 496 F.Supp. 812, 814 (N.D.Ill.1980).

As Berry points out, some courts interpreting *Monell* have held that a municipal policy of authorizing or encouraging police misconduct can be inferred where the municipality has been grossly negligent in the hiring, training, or disciplining of its police force. *See, e.g., Herrera v. Valentine*, 653 F.2d 1220, 1224 (8th Cir. 1981); *Owens v. Haas*, 601 F.2d 1242, 1246–47 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Popow v. City of Margate*, 476 F.Supp. 1237, 1245–46 (D.N.J.

1979); *Leite v. City of Providence*, 463 F.Supp. 585, 590–91 (D.R.I.1978); *see also Reeves v. City of Jackson*, 608 F.2d 644, 652 (5th Cir. 1979) (dictum). However, even under this most expansive view of *Monell*,[1] insufficient evidence was introduced at trial to raise a jury question that the Town was in fact grossly negligent in hiring, training, or disciplining McLemore.

Before hiring McLemore, Maben officials required him to complete a job application form and provide references. The Town's board of aldermen called a special meeting to conduct a job interview with McLemore, at which board members questioned him about his prior law enforcement training and experience. The board had reason to believe McLemore would be a competent police officer: he had completed a six-week course for police officers at the Mississippi Law Enforcement Officer's Training Academy, and had four years' experience as a police officer. Although McLemore had been employed in a number of different law enforcement departments for relatively short periods of time, there was no evidence that he had ever been dismissed or otherwise disciplined by any of these prior employers.

Upon hiring McLemore, Maben officials did not give him instructions concerning the making of traffic arrests or the use of deadly force. This omission cannot be considered gross negligence since the city determined that McLemore was an experienced officer who had received training in arresting persons and the use of firearms prior to joining the Maben police force.

After McLemore's arrest of Berry, Maben officials failed to take any disciplinary action against McLemore. Although some courts have held that a municipal policy of authorizing or encouraging police misconduct can be inferred when the municipality persistently fails to discipline police officers for known unconstitutional conduct, *Herrera v. Valentine*, 653 F.2d at 1224; *Turpin*

*v. Mailet*, 619 F.2d at 201; *Popow v. City of Margate*, 476 F.Supp. at 1246–47; such a policy cannot be inferred from a municipality's isolated decision not to discipline a single officer for a single incident of illegality. *See Landrigan v. City of Warwick*, 628 F.2d at 747; *Turpin v. Mailet*, 619 F.2d at 201–04. Such a policy clearly cannot be inferred where, as here, the municipality ordered an independent investigation of the allegedly unlawful arrest, and followed the investigator's recommendation in declining to discipline the police officer involved.

■ Berry presented no evidence at trial of any failure to discipline McLemore or other officers for misconduct taking place prior to the incident in question. There was no evidence that the Town's procedure of reprimand was so inadequate as to tacitly encourage unconstitutional conduct or to give police officers the idea that the Town was deliberately indifferent to the occurrence of such conduct. Therefore, this single failure to discipline could not have caused McLemore's prior misconduct toward Berry. A municipality may not be held liable under § 1983 absent a causal connection between its action or inaction and the constitutional deprivations visited on the plaintiff. *See* 42 U.S.C. § 1983 (imposing liability on "[e]very person who ... subjects, or causes to be subjected," another person to a constitutional deprivation); *Polk County v. Dodson*, —— U.S. ——, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (municipal policy must be "moving force" behind constitutional deprivation); *Monell v. Department of Social Services*, 436 U.S. at 692, 98 S.Ct. at 2036; *Reimer v. Smith*, 663 F.2d 1316, 1322 n.4 (5th Cir. 1981); *Landrigan v. City of Warwick*, 628 F.2d at 747 n.7.

■ We conclude, then, that no reasonable jury could find from the evidence presented at trial that McLemore's unlawful arrest of Berry was made pursuant to any policy or custom of the Town of Maben.[2] There being no evidence sufficient to

---

1. We expressly decline to rule on whether this interpretation of *Monell* is proper.

2. In reaching this conclusion we have considered all the evidence and the reasonable inferences therefrom in the light most favor-

raise a jury question that the Town "acted" through its policies, formally or informally adopted, to deprive Berry of his constitutional rights, the district court properly directed a verdict in favor of the Town. *See Reeves v. City of Jackson,* 608 F.2d at 653; *Reimer v. Short,* 578 F.2d 621, 626 (5th Cir. 1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1425, 59 L.Ed.2d 635 (1979).

### III.

■■ Berry next argues that the district court erred in failing to hold the Town as well as McLemore liable for Berry's attorneys' fees. We reject this argument. A plaintiff in a § 1983 suit may not be awarded attorneys' fees against a party properly dismissed from the action merely because the plaintiff prevailed against another party in the suit. This is so even where the party dismissed from the suit is the governmental entity that employed the culpable defendant. *Dean v. Gladney,* 621 F.2d 1331, 1337–38 (5th Cir. 1980), *cert. denied,* 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981).

### IV.

Berry argues finally that the district court erred in failing to assess as an item of costs the $750 fee of an expert witness, Dr. John Gassaway, who testified on Berry's behalf. In *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.), *cert. granted,* 452 U.S. 959, 101 S.Ct. 3106, 69 L.Ed.2d 970 (1981), the Fifth Circuit noted that the usual rule in civil litigation in federal courts is that expert witness fees are not recoverable as costs. The court then stated:

> Congress has manifested an intention that a different rule be applied in civil rights litigation .... District courts in many instances have awarded the full fees of experts on the ground that their testimony and assistance were necessary or helpful in representing clients in civil rights litigation.
>
> Counsel must have the assistance of experts to furnish effective and competent representation. In most civil rights

litigation ... expert testimony is a vital ingredient in the proper presentation and decision of a case. Without the ability to recover experts' fees, plaintiffs ... will be unable to bring these cases.

> We therefore remand for determination of appropriate ... costs, including expert witness fees, under the standards set forth in this opinion.

*Id.* (citations omitted).

The district court in this case expressly found that Dr. Gassaway's expert testimony "related to a sharp issue in the action between plaintiff and McLemore as to the position of each when McLemore pulled the trigger and fired the shot." The court nevertheless disallowed as an item of costs Dr. Gassaway's fee. The court gave no reason for this decision beyond stating that assessing the fee was "not warranted under the circumstances."

■■ The decision to award expert witness fees in civil rights litigation, like the decision to award attorneys' fees, rests within the sound discretion of the trial court, and will not be disturbed absent a showing of abuse. *See Taylor v. Sterrett,* 640 F.2d 663, 668 (5th Cir. 1981); *Hodge v. Seiler,* 558 F.2d 284, 287 (5th Cir. 1977). Our review of the record satisfies us that Dr. Gassaway's testimony was, as the district court itself found, an important part of Berry's case. We conclude that under the standard set forth in *Jones* the district court abused its discretion in failing to assess Dr. Gassaway's fee as an item of costs. We therefore assess against McLemore additional costs in the amount of $750.

AFFIRMED IN PART, REVERSED IN PART.

able to Berry. *Boeing v. Shipman,* 411 F.2d 365 (5th Cir. 1971).