**Katie O. SCOTT and Robert Hall, Plaintiffs,**

v.

**Theresa DONOVAN, Defendant and Third-Party Plaintiff,**

v.

**Dennis Ray FARMER and City of Atlanta, Third-Party Defendants.**

No. C80–2243A.

United States District Court,
N. D. Georgia,
Atlanta Division.

May 6, 1982.

---

James B. Drew, Jr., Atlanta, Ga., for plaintiffs.

George N. Sparrow, Jr., East Point, Ga., Marva Jones Brooks, Laurince C. Mayes, Atlanta, Ga., for third-party defendants.

Dennis Ray Farmer, pro se.

## ORDER

MOYE, Chief Judge.

The above-styled matter is before the Court on several motions: (1) plaintiffs' motion for leave to amend their complaint to add the City of Atlanta, Georgia, as a defendant; (2) defendant Donovan's motion for summary judgment; and (3) the City of Atlanta's motion for summary judgment.

Plaintiffs' motion for leave to amend their complaint to add the City of Atlanta, Georgia, as a direct defendant, having been read and considered, is hereby GRANTED. The Court will consider the City's motion for summary judgment as seeking dismissal both as a direct defendant and as a third-party defendant.

The undisputed facts of this case, based upon the pleadings and the six depositions filed are as follows. On February 2, 1980, plaintiff Scott purchased a 1965 Ford Fairlane Galaxie from Dennis Ray Farmer, d/b/a D & J Auto Parts in East Point, Georgia. Farmer sold the automobile for the account of Paul Carrigan and gave the sale proceeds to Carrigan. Dep. of Farmer at 18. Plaintiffs were not furnished title to the automobile on the date of purchase, but were promised by Farmer that he would soon acquire title by mail and furnish it to them. Dep. of Scott at 9. The car actually was titled in the name of Fred Beasley, from whom the vehicle had been stolen while it was loaned to his brother, Larry Beasley. Dep. of F. Beasley at 8, 11–12.

After having purchased the Ford from Farmer, the plaintiffs were stopped by City of Atlanta police officers on March 16, 1980, who told plaintiffs that their vehicle was reported stolen. The officers' "informant" failed to appear to press charges, so the police released the plaintiffs, advising them to acquire title from their vendor. Dep. of Scott at 10–11.

On the afternoon of March 17, 1980, plaintiffs returned to Farmers' place of business to attempt to obtain a refund. Dep. of Scott at 12. Farmer's wife, Juanita, called the East Point, Georgia, police at plaintiff Scott's request to ascertain whether the automobile was listed as stolen. *Id.* As a result of this call, officer Theresa Donovan was dispatched to D & J Auto Parts; she had ascertained that the vehicle in question was listed as stolen prior to her arrival. Dep. of Donovan at 8. Officer Donovan had obtained this information over her radio from a central communications office, *id.* at 10–11, which had checked with Atlanta police Sergeant J. L. Stroud, Sr., to make sure the car was still listed as stolen. Dep. of Stroud at 22. There is no indication that Sergeant Stroud directed officer Donovan to hold the automobile for the City of Atlanta; the depositions of the officers indicate that Sergeant Stroud merely told the communications officer the car was still listed as stolen, dep. of Stroud at 20, and that the communications officer told officer Donovan that she had talked with Sergeant Stroud and that officer Donovan should hold the plaintiffs for Atlanta. Dep. of Donovan at 14. It would be contrary to the policy of the Atlanta Bureau of Police Services for Atlanta to prosecute the individuals found in possession of a car actually stolen in Atlanta if those individuals were arrested for theft by receiving in another jurisdiction. Dep. of Stroud at 44. The prosecu-

tion would be left to the arresting jurisdiction.

While on the premises of D & J Auto Parts in East Point, plaintiffs showed officer Donovan a receipt they had received from Farmer when they purchased the car. Officer Donovan's "understanding at the time was that she (Scott) had been stopped by Atlanta and was unaware that the car was stolen and she was back at Mr. Farmer's trying to get the incident straightened out." Dep. of Donovan at 8. Donovan arrested plaintiffs as opposed to Farmer because they were in possession of a stolen vehicle and she felt she was making the arrest for the City of Atlanta, *id.* at 18–19, although Farmer acknowledged to officer Donovan that he had sold the car to the plaintiffs, *id.* at 26. Plaintiffs were taken to the East Point booking room, read their *Miranda* rights, and placed in a small room. Dep. of Scott at 13. Approximately thirty minutes after plaintiffs were booked, officer Donovan returned and said to plaintiff Scott, "This is your lucky day. You can go. Because you have small children you can go." *Id.* at 15.

On the basis of the above facts, plaintiffs aver that they were wrongfully arrested and imprisoned in violation of 42 U.S.C. § 1983, and that they were deprived of the privileges, immunities, and the equal protection guaranteed to them as citizens of the United States by the fourth, fifth, seventh, and fourteenth amendments to the Constitution of the United States. Complaint ¶ 8.

### Donovan's Motion for Summary Judgment

Defenant Donovan seeks dismissal of the case against her on the ground that the arrest of plaintiffs was based upon probable cause and that even if her acts were negligent they do not arise to the stature of a constitutional tort.

"The Constitution does not guarantee that only the guilty will be arrested," *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979), but "a warrantless and malicious arrest based on no probable cause violates liberty, and hence section

1983." *Reeves v. City of Jackson*, 608 F.2d 644, 650 (5th Cir. 1979). In *Reeves*, the plaintiff alleged that he was falsely arrested and imprisoned in violation of his fourteenth amendment liberty interest. The court held that a jury should decide whether probable cause existed for plaintiff's arrest, *id.* at 650, as well as whether the arresting officers could assert a good faith immunity. *Id.* at 651. The court's holding was not that "probable cause" and "good faith" determinations are always jury questions, but that on the basis of the facts confronted in the case at bar they were jury questions.

Defendant Donovan argues that she had probable cause to arrest plaintiffs because they were in possession of an automobile known by her to have been stolen, in violation of Ga.Code Ann. § 26–1806, which reads:

*Theft by receiving stolen property*

(a) A person commits theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. "Receiving" means acquiring possession or control or lending on the security of the property.

(b) In any prosecution under this section it shall not be necessary to show a conviction of the principal thief.

The City has argued that probable cause for arrest arose from the fact that the plaintiffs were the occupants of a stolen vehicle, citing *Lipton v. United States*, 348 F.2d 591 (9th Cir. 1965), and *Coley v. State*, 135 Ga.App. 810, 219 S.E.2d 35 (1975).

*Lipton* held that upon learning via radio from his headquarters that a stopped car was a stolen car in the possession of a particular driver, an officer had probable cause for arresting the driver on the charge of driving a stolen vehicle. 348 F.2d at 594. *Coley* held that the occupants of a stolen vehicle were lawfully placed under arrest *under the facts and circumstances presented*, which included an informant's prior tip

that a stolen car would arrive at a particular residence on a particular night. 135 Ga.App. at 814, 219 S.E.2d 35.

■ The Court concludes that the question of existence of probable cause, which is based upon the facts and circumstances within the arresting officer's knowledge, is a genuine issue of material fact which may best be determined by a jury. Thus, the Court declines to conclude as a matter of law that probable cause arose for plaintiffs' arrest because of the explanatory factors known to defendant Donovan with respect to plaintiffs' possession of the stolen vehicle.

■ In her answer, although not in her brief, defendant Donovan relied on her good faith as a defense to plaintiffs' claim. Even if defendant Donovan lacked probable cause in arresting plaintiffs, she can avoid section 1983 liability by virtue of her qualified immunity if she can demonstrate her good faith in making the arrests. *Walters v. City of Ocean Springs*, 626 F.2d 1317, 1320 (5th Cir. 1980) (per curiam). Good faith not having been briefed on summary judgment, however, that question is similarly held for trial by jury. *See Reeves v. City of Jackson*, 608 F.2d 644, 651 (5th Cir. 1979) (holding good faith to be a jury question on record before court).

■ Finally, defendant Donovan contends that the suit against her does not rise to a constitutional level and should be dismissed for lack of jurisdiction, citing *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). *Parratt* held that the failure of a state prisoner to receive by mail certain hobby materials which were negligently lost by state prison officials does not give rise to a claim under section 1983 because the deprivation that occurred did not do so as a result of some established state procedure. The mere act of negligence alleged in *Parratt* is far different from the illegal arrest alleged here and provides no basis for a departure from the Fifth Circuit's previous directive that a warrantless and malicious arrest based on no probable cause violates liberty and section 1983. *Reeves v. City of Jackson*, 608 F.2d 644, 650 (5th Cir. 1979). Consequently, summary judgment may not be awarded defendant Donovan on the basis of *Parratt.*

■ The Court notes that defendant Donovan argued at an oral hearing held on her motion that she should be dismissed as a defendant because her actions were at the direction of Atlanta's Sergeant Stroud. In a supplementary brief, defendant Donovan cites *Gregg v. State*, 233 Ga. 117, 210 S.E.2d 659 (1974), for the proposition that she was merely an extended arm of the City of Atlanta in effectuating plaintiffs' arrest. While *Gregg* and other cases cited do support defendant's legal argument in the context of *criminal* cases, the defense is inapplicable here in any event since genuine issues of material fact continue to exist on the basis of the depositions on file as to whether Sergeant Stroud directed officer Donovan to arrest plaintiffs. In addition, to the extent such an "agency" theory relies upon the doctrine of *respondeat superior*, defendant Donovan may not recover from third-party defendant the City of Atlanta under section 1983, *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1977); *Walters v. City of Ocean Springs*, 626 F.2d 1317 (5th Cir. 1980), but to recover thereunder must prove that a municipal policy or custom, when carried out, inflicted the injury.

For the above reasons, defendant Donovan's motion for summary judgment is DENIED.

### City of Atlanta's Motion for Summary Judgment

■ In deciding the motion for summary judgment of the City of Atlanta, the Court applies the Supreme Court's recent pronouncement regarding municipalities' section 1983 liability: it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department*

*of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1977).

On the basis of *Monell*, the City of Atlanta contends that there is no basis for liability to officer Donovan even if it is accepted as fact that officer Donovan was acting as the city's agent and pursuant to a directive of one of the city's officers. The city contends that officer Donovan's only claims against it are based on the theory of *respondeat superior* which are not actionable under *Monell* and are *not* based on the policy or custom of the City of Atlanta. With the above statement of the law, the Court agrees, but the facts before the Court are presently insufficient for the Court to determine whether what occurred did occur as a result of the policy or custom of the city. Sergeant Stroud indicated in his deposition that the City of Atlanta's custom is to arrest all occupants of stolen vehicles despite their excuses, dep. of Stroud at 54–55, and it remains unclear whether Sergeant Stroud directed the East Point communications center to hold the plaintiffs for the City of Atlanta. Consequently, because a prima facie case against the city may still be outlined by third-party plaintiff Donovan, the City of Atlanta's motion for summary judgment with respect to her claim is hereby DENIED.

Finally, the City of Atlanta having been added as a direct defendant earlier in this order, the Court considers the city's motion as against plaintiffs. On the basis of the previous rulings herein, the motion may not be granted because genuine issues of material fact continue to exist as to the directions given East Point by Sergeant Stroud and the policy and custom of the city to give such directions.

Accordingly, the motion for summary judgment of the City of Atlanta is hereby DENIED as to plaintiffs and third-party plaintiff.