Brenda LINDSEY, Melvyn Williams, Plaintiffs–Appellants,

v.

Larry STOREY, Indiv. and as a member of the Georgia State Patrol, Marty Smith, Ind. and as an investigator for the Sheriff of Monroe County, GA, Does I, II and III, Indiv. and as law enforcement officials of Monroe County, GA and elsewhere, Defendants–Appellees, Third–Party Plaintiffs,

United States of America, Third–Party Defendant.

Nos. 90–8692, 90–8777.

United States Court of Appeals, Eleventh Circuit.

July 23, 1991.

**556**

Herbert Shafer, Atlanta, Ga., for plaintiffs-appellants.

Neal B. Childers, Asst. Atty. Gen., Atlanta, Ga., for Storey.

W. Franklin Freeman, Jr., James A. Vaughn, Mills Freeman Vaughn & Sose-·bee, Forsyth, Ga., for Smith.

Frank L. Butler, III, Asst. U.S. Atty., Macon, Ga., Ricky E. Jones, Warner Robins, Ga., for U.S.

Before FAY and EDMONDSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

In this section 1983 civil rights case, plaintiffs appeal the grant of summary judgment in favor of defendants, two law enforcement officers investigating the circumstances surrounding a traffic accident involving plaintiffs. Defendants are accused of wrongful seizure and retention of personal property, false arrest, and wrongful detention, in violation of the Fourth and Fourteenth Amendments to the Constitution. We affirm in part, reverse in part, and remand.

## I. FACTS

This case arises out of a traffic accident involving plaintiff Brenda Lindsey's automobile, though Lindsey was not present at the scene. The automobile was driven by Jeffrey Sutton, Lindsey's brother, and carried plaintiffs Melvyn Williams and Rodney McClaine as passengers. Defendant Larry Storey, a Georgia state patrolman, responded with another patrolman to the scene of the accident.

Patrolman Storey conducted a routine driver's license check on Sutton and learned that Sutton's license was suspended. Storey arrested Sutton for driving too fast for conditions, for having no proof of insurance, and for driving with a suspended license. Storey then learned from the driver of the other automobile that the occupants of plaintiff Lindsey's automobile had offered this other driver approximately $2,500 in cash not to report the accident to the police. Storey questioned the occupants of plaintiff Lindsey's car about the purpose of their trip and received contradictory responses. All three denied knowledge or ownership of money offered to the other driver and claimed they knew of no money hidden in plaintiff Lindsey's automobile.

---

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit Court, sitting by designation.

Storey obtained Sutton's consent to search the car. Before conducting the car search, Storey searched plaintiffs Williams and McClaine briefly for weapons in their possession and placed them in the squad car while he conducted the car search. The pat-down unearthed more than $2,600 in cash in plaintiff Williams' possession. Patrolman Storey seized the cash along with jewelry worn by Williams worth more than $1,300. Storey also seized $457 in cash and more than $89,000 worth of jewelry he found in plaintiff McClaine's possession. In his search of the automobile's trunk, Storey discovered a compartment with such a large amount of cash that the money was visible without opening the compartment. Patrolman Storey seized more than $50,000 in cash from the trunk of the automobile. Storey also discovered some handwritten notes that he believed were in a narcotics-related code.

Storey then transported all three occupants of plaintiff Lindsey's car to the Monroe County sheriff's office. Only Sutton was under arrest, and plaintiff Williams has conceded that he accompanied Patrolman Storey voluntarily. Storey arranged for plaintiff Lindsey's vehicle to be towed from the scene. Storey's involvement in plaintiffs' case ended once Sutton, McClaine, and Williams were taken to the sheriff's office.

Defendant Marty Smith, a lieutenant with the Upson County Sheriff's Department and an investigator for a narcotics task force covering an area that includes Monroe County, was brought into the case after the arrival of Sutton, Williams, and McClaine at the station. Plaintiffs Williams and McClaine were left in a waiting area and were not placed under arrest. Lieutenant Smith claims that he matched plaintiff McClaine's driver's license photograph with a photograph in a booklet provided by the Georgia Intelligence Network

on the "Miami Boys in Georgia." The pamphlet detailed a drug operation based in Miami and identified plaintiff McClaine as Melvin Shinholster, a.k.a. Melvin McClaine. Smith also obtained a background report on plaintiff McClaine indicating that McClaine was also known as Melvin Shinholster and that McClaine had the same FBI fingerprint number as Melvin McClaine.

Lieutenant Smith retained the cash and jewelry, seized by Patrolman Storey, after several agents of the Drug Enforcement Administration (DEA) said they planned to initiate forfeiture proceedings against the property. Those forfeiture proceedings were consolidated with this action. Smith also impounded plaintiff Lindsey's car for more than nine months, eventually releasing it to a finance company holding a lien on the automobile.

Plaintiffs McClaine and Williams were arrested several hours after their arrival at the station. The parties dispute how long the two men were incarcerated. Plaintiff Williams testified at his deposition that he was held for three nights. Lieutenant Smith claims that Williams was released after forty-eight hours. No formal charges were filed against either man, and no judicial determination of probable cause was made until plaintiffs filed a habeas corpus petition two or three days after their arrest.

All section 1983 claims brought by plaintiff McClaine were dismissed after the parties were unable to locate him. The district court granted a motion to dismiss all claims against three unknown Monroe County deputies, referred to as John Does I, II, and III,[1] and a motion to dismiss some of the claims against Lieutenant Smith. The district court later granted summary judgment motions by Patrolman Storey and Lieutenant Smith on all remaining claims facing them. After entry of judgment in defendants' favor, plaintiffs appealed.[2]

---

**1.** Plaintiffs purport to appeal the district court's order dismissing all claims against the "John Doe" defendants but offer no specific arguments challenging the district court's ruling. We affirm that dismissal.

**2.** The procedural posture of this appeal is somewhat complicated. The district court first granted Patrolman Storey's motion for summary judgment, and then later granted Lieutenant Smith's motion for summary judgment on all claims remaining against him. Plaintiffs then brought appeal no. 90–8692. We initially ques-

## II. DISCUSSION

Plaintiffs challenge the district court's grant of summary judgment to defendants Storey and Smith on four claims: (1) wrongful seizure of personal property claimed by plaintiffs Williams and Lindsey, (2) wrongful retention of the same property, (3) false arrest of plaintiff Williams, and (4) wrongful detention of plaintiff Williams.

### A. Wrongful Seizure and Continued Retention of Personal Property

#### 1. Wrongful Seizure

■ Patrolman Storey admits to confiscating cash and jewelry he found in plaintiff Williams' possession at the time of his pat-down search for weapons. Storey also admits confiscating more than $50,000 in cash he found in the trunk of plaintiff Lindsey's automobile. Williams and Lindsey claim that the seizure of cash and jewelry violated the Fourth and Fourteenth Amendments to the Constitution.[3] Defendant Storey has asserted qualified immunity from suit on these claims, arguing that he seized the property for "safekeeping" and because he suspected the cash had been used in the attempt to pay the other driver not to report the accident to the police.

■ That the seizures were the result of lawful searches is clear. The search of plaintiff Williams was a brief pat-down for weapons and was supported by reasonable suspicion of illegal activity aroused by reports of the attempted pay-off of the other driver not to report the accident to the police. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Sutton consented to the search of Lindsey's automobile; and as the driver, Sutton had apparent authority to permit the search. *See United States v. Dunkley*, 911 F.2d 522, 526 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 987, 112 L.Ed.2d 1071 (1991).

With respect to the seizures themselves, the Supreme Court held in *United States v. Place*, 462 U.S. 696, 707–09, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983), that the seizure of personal property, even to facilitate an investigation of suspicious surrounding circumstances, must generally be accompanied by probable cause. If, however, the seizure is brief and minimally intrusive, then only the "reasonable suspicion" outlined in *Terry* is required to justify the seizure as "reasonable" under the Fourth Amendment.

■ The Court has declined, however, to adopt an outside time limitation for a seizure before the heightened suspicion of probable cause is required to make it reasonable for Fourth Amendment purposes. In *Place*, the Court acknowledged the "desirability of providing law enforcement authorities with a clear rule to guide their conduct" in this area, but "question[ed] the wisdom of a rigid time limitation. Such a limit would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation." *Id.* at 709 n. 10, 103 S.Ct. at 2646 n. 10. In a case applying *Terry* to the seizure of a person, the Court similarly explained:

> [W]e have emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes. Much as a 'bright line' rule would be desirable in evaluating whether an investigative detention is unreasonable [based upon the time of detention], common sense and ordinary human experience must govern over rigid criteria.

---

tioned our jurisdiction to hear this appeal because the district court had not yet entered a final judgment pursuant to F.R.C.P. 54(b). The district court later entered final judgment, thereby curing plaintiff's premature notice of appeal. *Kramer v. Unitas*, 831 F.2d 994, 997 (11th Cir.1987). Nonetheless, plaintiffs appealed this entry of final judgment as well, and that appeal (no. 90–8777) was consolidated with the earlier appeal for ease of decision.

3. Plaintiff Lindsey also claims that her automobile was wrongfully seized; this claim is meritless. Patrolman Storey impounded the vehicle because its only authorized driver, Sutton, had been driving under a suspended license and was under arrest. The remaining passengers, plaintiffs Williams and McClaine, had no proof of insurance, and plaintiff Williams had no driver's license. Patrolman Storey had no good choice but to have the automobile towed.

*United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985).

■ This purposefully ambiguous standard for when a seizure is protracted enough to require probable cause makes it inappropriate for us to analyze the reasonableness of Patrolman Storey's seizure under the higher, probable cause requirement. Storey has asserted qualified immunity from these unreasonable seizure claims. Qualified immunity shields law enforcement officers performing discretionary functions from suit for all violations except those of clearly established law. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Barts v. Joyner,* 865 F.2d 1187 (11th Cir. 1989). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Where the Supreme Court has chosen to facilitate effective law enforcement by explicitly rejecting a "bright-line rule" about when a seizure is so lengthy as to require probable cause to be reasonable, we are extremely wary of requiring law enforcement officers to justify a seizure with probable cause unless the length of detention was so prolonged that it falls well outside the range of seizures found permissible under *Terry* and *Place.*

This case presents no such quandary. Patrolman Storey conducted the brief, pat-down search of Williams in preparation for his planned search of Lindsey's automobile. The time required to complete that automobile search, and thereby determine whether or not there was probable cause to arrest Williams and seize the property, was brief—probably a matter of minutes. Plaintiff has presented no evidence about how long the car search took; but, even considering the outside range of time necessary to complete the car search and to determine whether or not there was probable cause to suspect Williams of illegal activity, the length of detention does not clearly fall outside the time found permissible under *Terry, Place,* and their progeny. *See, e.g., Place,* 462 U.S. at 710, 103 S.Ct.

at 2646 (ninety-minute detention required probable cause); *Barts v. Joyner,* 865 F.2d 1187 (11th Cir.1989) (person seized without probable cause for length of time necessary to transport to police station); *Daniel v. Taylor,* 808 F.2d 1401 (11th Cir.1986) (person seized without probable cause for two hours and forty-five minutes).

■ Because Storey cannot be held to the heightened requirement of probable cause, the seizures in question must be supported by the reasonable suspicion required in *Terry*-type seizures. But, again, Storey is entitled to qualified immunity unless he *clearly* lacked the reasonable suspicion necessary to justify the search. As a result, more is required than a mere hindsight determination of whether reasonable suspicion actually existed at the time of the seizure; defendant Storey is protected by qualified immunity unless there was *clearly* no reasonable suspicion to seize the property. Along these same lines, the Supreme Court has held that even a warrantless search unsupported by probable cause may not give rise to section 1983 liability: "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987). In the same way, it is inevitable that law enforcement . officers will sometimes reasonably but mistakenly conclude that reasonable suspicion is present, and these officers are protected by qualified immunity. As a result, Patrolman Storey is entitled to qualified immunity if the facts known to him at the time of the seizure at least *arguably* created a reasonable suspicion "associat[ing] the property with criminal activity." *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980).

The seizures of the cash found in the pat-down search of plaintiff Williams and in the trunk of plaintiff Lindsey's automobile were supported by enough evidence to

establish arguable reasonable suspicion. At the time plaintiff Williams was searched, Patrolman Storey had been told by the other driver that a roll of more than $2,500 in cash was offered by the occupants of Lindsey's automobile not to report the accident to the police. Not only would such a failure to report have violated Georgia law, see O.C.G.A. § 40–6–274 (1982) (accidents with at least $250 in damage must be reported to police), but the attempted pay-off was a legitimate basis for Patrolman Storey's suspicion that the occupants of Lindsey's car might be involved in illegal activity. The discovery of about $2,600 in cash—almost the exact amount offered the other driver—established the requisite level of suspicion that plaintiff Williams was involved in the attempted pay-off and that the roll of cash found in his pocket was the cash actually offered to the other driver.

■ As for the cash seized from the trunk, Sutton, McClaine, and Williams had previously denied there was money in the car. Storey's search of the trunk revealed more than $50,000 in cash, unclaimed by the occupants. Also, the cash was accompanied by handwritten receipts strikingly similar to a receipt that accompanied the cash found in plaintiff Williams' pocket. Whether or not these facts were sufficient to establish *actual* reasonable suspicion at the time of both of the cash seizures, the facts are supportive enough that we are not forced to conclude that there was *clearly* no reasonable suspicion. Defendant Sto-

rey is therefore entitled to qualified immunity; summary judgment was properly granted on this claim.[4]

■ We cannot reach the same conclusion about the gold jewelry seized by Patrolman Storey from plaintiff Williams. Williams claims that the jewelry was seized at the same time as his cash—*before* the search of the automobile. At the time of the seizure, then, Storey knew only that $2,500 in cash had been offered to the other driver not to call the police and that the occupants of Lindsey's car had conflicting stories about their ultimate destination. Though Patrolman Storey claims in a conclusory way that he immediately suspected the occupants of Lindsey's car were involved in some narcotics-related activity, mere suspicion of drug-dealing was not particularized enough to justify the seizure of property with *no* apparent connection to such drug activity or the attempted pay-off of the other driver involved in the collision. Storey has advanced no arguments—either in his appellate brief or at oral argument—supporting a reasonable belief that there was particularized suspicion at the time Storey seized the jewelry to connect Williams' gold jewelry to illegal conduct.[5] As the story has been presented to us, Patrolman Storey's suspicion of drug-dealing—not yet heightened by the discovery of more cash in the trunk of the automobile—*clearly* failed to establish the reasonable suspicion necessary to seize Williams' jewelry.[6] As a result, we cannot say that

---

**4.** Plaintiffs have sued defendant Storey in both his official and individual capacities. Our conclusion that defendant Storey is entitled to qualified immunity from suit on plaintiffs' claim of wrongful seizure of money does not relieve Storey of liability in his official capacity on this claim. *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). To assert successfully official-capacity liability, plaintiffs must demonstrate that "the entity itself is a 'moving force' behind the deprivation; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* at 166, 105 S.Ct. at 3105. Because plaintiffs have presented no evidence tying the seizure of cash to any official "policy or custom," summary judgment was properly granted on this official capacity claim as well.

**5.** In his brief, defendant Storey says that the Monroe County Sheriff's Department was responsible for the seizure of plaintiff's jewelry but offers no facts supporting this assertion.

**6.** We note that the facts justifying the seizure of Williams' cash might very well have established arguable probable cause to arrest Williams for the unlawful attempt to bribe the other driver not to report the accident to the police. If Storey had arrested Williams, the jewelry could have been properly seized as part of the administrative processing before incarceration. But, Storey has testified that Williams was not under arrest at the time of the seizure, and absent *any* argument supporting a reasonable suspicion that Williams' jewelry was connected with illegal activity, the seizure was clearly unreasonable.

Patrolman Storey is entitled to qualified immunity on this claim; summary judgment was improperly granted.[7]

### 2. Continued Retention

■ Plaintiffs also claim that the continued retention of their personal property—the car, cash, and jewelry—violates their procedural due process rights. Even assuming the continued retention of plaintiffs' personal property is wrongful, no procedural due process violation has occurred "if a meaningful postdeprivation remedy for the loss is available." *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984) (extending the holding in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), to cover intentional deprivations of property by state employees acting under color of state law). Though defendants admit retaining plaintiffs' personal property, "the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *See id.*

Plaintiff Lindsey argues that she was deprived of such a postdeprivation remedy because no forfeiture proceedings were ever initiated against her automobile. In support, she cites our decision in *Jonas v. City of Atlanta*, 647 F.2d 580, 585 (5th Cir. Unit B 1981),[8] in which we held that a section 1983 claim for damages could be maintained against law enforcement officials for unlawful conversion of an automobile if the officers refused to release the automobile and failed to initiate forfeiture proceedings.

The decision in *Jonas*, however, predates the Supreme Court's holding in *Hudson v. Palmer*, and the particular holding in *Jonas* relied upon by plaintiff did not survive the *Hudson* decision. *Hudson* made clear that as long as *some* adequate postdeprivation remedy is available, no due process violation has occurred. *See* 468 U.S. at 533, 104 S.Ct. at 3204. The state of Georgia has created a civil cause of action for the wrongful conversion of personal property. *See* O.C.G.A. § 51–10–1 (1982). "This statutory provision covers the unauthorized seizure of personal property by police officers. Therefore, the state has provided an adequate postdeprivation remedy when a plaintiff claims that the state has retained his property without due process of law." *Byrd v. Stewart*, 811 F.2d 554, 555 n. 1 (11th Cir.1987) (citing *Norred v. Dispain*, 119 Ga.App. 29, 166 S.E.2d 38 (1969) (trover action may be brought against police chief for seizure and retention of automobile)). Because plaintiff Lindsey has had access to an adequate postdeprivation remedy, no procedural due process violation has occurred, whether or not defendant Smith ever initiated forfeiture proceedings on the automobile.

■ This same statutory remedy and the DEA forfeiture proceedings have provided alternate postdeprivation avenues for recovery of the cash and jewelry seized by Patrolman Storey at the scene of the accident and later retained by Lieutenant Smith. As a result, summary judgment was properly granted to defendants Storey and Smith on these claims as well.[9]

### B. False Arrest and Wrongful Detention

Plaintiff Williams claims that defendant Smith arrested him without probable cause

---

**7.** Our conclusion that defendant Storey has inadequately justified his seizure of plaintiff's gold jewelry does not preclude defendant from offering further evidence on remand—through a motion or at trial—that would support a finding of reasonable suspicion. And, because our conclusion that Storey's seizure of plaintiff's property was clearly unreasonable is based upon *plaintiff's* factual allegations, defendant Storey may still rebut those allegations in subsequent proceedings.

**8.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982) (en banc), the Eleventh

Circuit Court of Appeals adopted as binding precedent all decisions of Unit B of the former Fifth Circuit Court of Appeals.

**9.** The availability of a postdeprivation remedy, while negating any procedural due process claims, cannot defeat plaintiffs' claim that the seizure itself by defendant Storey was violative of the Fourth Amendment. *See Byrd v. Stewart*, 811 F.2d 554, 555 (11th Cir.1987) (citing *Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir.1985) (en banc)). As a result, we address this substantive claim separately. *See supra*, section II(A)(1).

and held him in detention for several days without any formal charges or judicial determination of probable cause, violating the Fourth and Fourteenth Amendments to the Constitution.[10]

### 1. False Arrest

■ Plaintiff Williams argues that because there are factual disputes about his arrest, summary judgment should have been denied. But, Lieutenant Smith has asserted qualified immunity from suit on this false arrest claim, and an appellate court reviewing a claim of qualified immunity "need not consider the correctness of the plaintiff's version of the facts." *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). Instead, the "issue is a purely legal one: whether the facts alleged by the plaintiff ... support a claim of violation of clearly established law." *Id.* at 528 n. 9, 105 S.Ct. at 2816 n. 9.

We have held that a "warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim." *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir.1990) (citing *Reeves v. City of Jackson, Miss.*, 608 F.2d 644, 651 (5th Cir.1979)). "The existence of probable cause, however, is an absolute bar to a section 1983 action for false arrest." *Id.* at 1505–06 (citing *Howell v. Tanner*, 650 F.2d 610, 614 (5th Cir. Unit B 1981)).

As was the case in our determination of probable cause to seize plaintiffs' personal property, more is required than a mere hindsight determination of whether probable cause actually existed at the time of plaintiff Williams' arrest. "In determining whether qualified immunity exists, the issue is not probable cause in fact but 'arguable' probable cause. Actual probable cause is not necessary for an arrest to be

objectively reasonable." *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990) (citations omitted). As a result, Lieutenant Smith is entitled to qualified immunity if the facts that plaintiff has conceded were known to Smith at the time of the arrest were *arguably* "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *See Marx*, 905 F.2d at 1506.

We think the facts known to Lieutenant Smith at the time of plaintiff's arrest were enough to establish a reasonable belief that there was probable cause. Williams admits to having denied knowledge or ownership of the more than $2,500 in cash offered the driver of the other automobile if the driver agreed not to report the accident to the police as was required by law. *See O.C. G.A.* § 40–6–274 (1982) (accidents with at least $250 in damage must be reported to police). When Williams was briefly searched at the scene, about $2,600 in cash, almost exactly the amount offered the other driver, was found in his pocket. When questioned later about the purpose of his trip to south Georgia with Sutton and McClaine, Williams offered answers that not only conflicted with answers given by Sutton and McClaine, but with his own answers as well.

In addition, Lieutenant Smith was instructed by DEA agents to hold the cash and jewelry seized from Williams for formal forfeiture proceedings, further adding to Smith's suspicion that Williams and McClaine were engaged in some type of illegal drug activity. This suspicion was further heightened by Smith's discovery that McClaine was actually Melvin Shinholster, a reputed member of the "Miami Boys" narcotics operation. At his deposition, Lieutenant Smith testified that he believed from the surrounding circumstances that plaintiff Williams and the other occu-

---

**10.** Plaintiff Williams also asserts false arrest and wrongful detention claims against defendant Storey; we reject them as meritless. Williams admitted in deposition testimony that he voluntarily accompanied Patrolman Storey to the sheriff's office and did not consider himself under arrest.

In addition, given our conclusion that Patrolman Storey arguably had probable cause to

seize the $2,600 he found in Williams' pocket, the same facts, together with the subsequent discovery of more than $50,000 in cash in the trunk of the automobile, were more than enough for "a reasonable officer" to "believe[ ] that as a matter of law he could detain [plaintiff] awhile." *See Barts v. Joyner*, 865 F.2d 1187, 1194 (11th Cir.1989).

pants of plaintiff Lindsey's automobile were participating in a "drug run" to purchase cocaine. Smith testified that the $50,000 in cash found in the trunk was bundled in a fashion typical in drug operations, and the bundles were accompanied by handwritten notes that Smith believed were coded to reflect cash transactions for narcotics. Moreover, the money found in plaintiff Williams' pocket was accompanied by the same type of handwritten notes.

Again, we need not conclude that the facts outlined above establish actual probable cause at the time of plaintiff's arrest. The facts are supportive enough that we are not forced to conclude that there was *clearly* no probable cause to arrest. Because the facts support a reasonable belief that there was probable cause, the district court properly granted Lieutenant Smith's motion for summary judgment on the false arrest claim.[11]

### 2. Wrongful Detention

Plaintiff Williams also complains that he was detained for several days without the filing of any charges and without any judicial determination of probable cause, violating his rights under the Fourth and Fourteenth Amendments. Plaintiff has produced no evidence, however, that defendant Smith, who is a lieutenant in the Upson County Sheriff's Department, was responsible for his continued detention in the Monroe County jail. For example, plaintiff has produced no evidence that de-

fendant Smith was responsible for ensuring that inmates at the Monroe County jail be promptly charged and arraigned. The Supreme Court has made clear that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to survive summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Even assuming the extended detention of plaintiff Williams violated his Fourth Amendment rights,[12] plaintiff's bare supposition that defendant Smith is responsible for such a violation is insufficient to defeat Smith's motion for summary judgment.

### III.

For the foregoing reasons, the district court's order granting summary judgment and final judgment to defendant Smith is AFFIRMED. The court's order granting summary judgment to defendant Storey is AFFIRMED in part, REVERSED as to plaintiff Williams' claim of wrongful seizure of jewelry, and REMANDED for further proceedings.

---

**11.** Plaintiffs have sued defendant Smith in both his official and individual capacities. Our conclusion that defendant Smith is entitled to qualified immunity from suit on plaintiff Williams' claim of false arrest does not relieve Smith of liability in his official capacity on this claim, however. *See supra* note 4. Plaintiffs sued defendant Smith in his official capacity as "an investigator for the Sheriff of Monroe County, Georgia." To escape summary judgment, therefore, plaintiff was required to present some evidence that the alleged deprivations were the result of an official "policy or custom" of the Monroe County Sheriff's Department. *See id.* The record indicates that defendant Smith is a lieutenant with the narcotics task force covering an area that includes Monroe County, and that Smith is in fact employed by the Upson County Sheriff's Department. Because plaintiff has failed to sue the entity that actually employs

defendant Smith and has failed to offer any evidence implicating any official "policy or custom" of the Monroe County Sheriff's Department, we affirm the dismissal of the official-capacity claims as well.

**12.** *See generally County of Riverside v. McLaughlin,* —— U.S. ——, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) (judicial determination of probable cause must be made within forty-eight hours of arrest); *Gerstein v. Pugh,* 420 U.S. 103, 123–25, 95 S.Ct. 854, 868–69, 43 L.Ed.2d 54 (1975) (judicial determination of probable cause must be made "either before or promptly after arrest"); *Llaguno v. Mingey,* 763 F.2d 1560, 1568 (7th Cir.1985) (delay unjustified where individual subjected to "imprisonment [based] on suspicion, while the police look for evidence to confirm their suspicion").