962 F.2d 14
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kelly L. MARTINEZ, Plaintiff-Appellee,
v.
COUNTY OF SAN DIEGO; Elizabeth Foster, Defendants-Appellants.
 No. 90-56277.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 9, 1991.
Decided May 8, 1992.
 
 Before JAMES R. BROWNING, ALARCON and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Foster appeals from the denial of her motion for summary judgment on the issue of her qualified immunity from liability under 42 U.S.C. § 1983. We reverse and remand.
 
 I.
 
 3
 On September 18, 1988, when Sergeant Elizabeth Foster of the San Diego County Sheriff's Department reported for duty as acting watch commander[1] at San Diego County's Descanso Detention Facility, Deputy Sheriff Ronald Bureau told her that an inmate informant had reported Kelly Martinez would be smuggling narcotics to her husband, inmate Johnny Martinez.[2] Bureau told Foster that the informant had provided him with accurate information about narcotics transactions on two or three prior occasions. Bureau also informed Foster that Mr. Martinez had told Bureau he was a narcotics user.[3] Foster gave Bureau permission to conduct a surveillance of Mr. and Mrs. Martinez during their three-hour contact visit that day.
 
 
 4
 When Mrs. Martinez arrived for her visit, she was not searched but was allowed to proceed to the visiting area, bringing her cigarettes, lighter and identification card. The visiting area was a fenced-in, outdoor space containing picnic tables at which the inmates and visitors could sit. Bureau, stationed in a nearby office, watched the Martinez couple visit for about an hour. He then saw Mrs. Martinez remove from her pocket some object he could not identify and hand it to Mr. Martinez. Bureau told Foste what he had seen and also reported that Mrs. Martinez was behaving very nervously, apparently looking around to see if she and her husband were being watched.
 
 
 5
 Foster authorized Bureau to stop the visit, bring the couple to the administrative offices and search them. Bureau took Mr. Martinez to one private office and Deputy Kelly Kidwell took Mrs. Martinez to another. Kidwell told Mrs. Martinez that she was suspected of smuggling drugs and ordered her to empty her pockets. After Mrs. Martinez complied, Kidwell told her she was to be strip searched. Mrs. Martinez began to cry and said she did not want to take off her clothes. Kidwell said she would be taken to another facility and strip searched there if she did not undress.
 
 
 6
 Mrs. Martinez, who was wearing denim jeans, a tube top, a shirt, underwear, socks and sneakers, then removed her clothing as Kidwell checked each item. At some point, Foster entered the office and watched until the search was completed.
 
 
 7
 When Mrs. Martinez was naked, she was told to bend over and spread her buttocks. Kidwell observed a tampon in her vagina and asked her to remove it for closer examination. Mrs. Martinez did and was then told to bend over and spread her buttocks a second time. After the second visual body cavity search, Mrs. Martinez was allowed to put on her tube top and underwear. Kidwell then ran her gloved fingers through Mrs. Martinez' hair and behind her ears. Mrs. Martinez obeyed an order to run her own fingers through her mouth and gum area. No contraband was found in either the search of Mrs. Martinez or the simultaneous search of her husband. After the search, Mrs. Martinez was permitted to finish dressing and continue her visit.
 
 
 8
 On May 16, 1989, Mrs. Martinez filed a complaint in the Superior Court for the County of San Diego alleging that Foster, Kidwell and Bureau had violated her fourth amendment rights and, with the County of San Diego, were liable to her under 42 U.S.C. § 1983.[4] The defendants removed the action to the United States District Court for the Southern District of California, and sought summary judgment on the ground, inter alia, that Foster, Kidwell and Bureau were entitled to qualified immunity from § 1983 liability. Mrs. Martinez filed a cross-motion for partial summary judgment on the ground, inter alia, that the strip search violated the fourth amendment. The district court granted partial summary judgment for Mrs. Martinez on the ground the search was unlawful because not founded on reasonable suspicion. The court also held Kidwell and Bureau were entitled to qualified immunity but Foster was not. This appeal involves only the latter holding.
 
 II.
 
 9
 Government officials who perform discretionary functions enjoy a qualified immunity from civil damages under 42 U.S.C. § 1983[5] so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). An interlocutory order denying qualified immunity is immediately appealable to the extent it turns on an issue of law. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Vaughan v. Ricketts, 859 F.2d 736, 739 (9th Cir.1988).
 
 
 10
 In analyzing a claim of qualified immunity from § 1983 liability, we first identify the specific right allegedly violated. Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991). We then determine whether that right was so clearly established at the time of its alleged violation "as to alert a reasonable officer to its constitutional parameters...." Id. If the right was not clearly established at the relevant time, we extend qualified immunity. Finally, if the right was clearly established at the relevant time, we extend qualified immunity so long as the alleged violator could reasonably have believed the particular conduct at issue to be lawful. See id.
 
 III.
 
 11
 We agree with Foster and Mrs. Martinez that at the time of the search, prison visitors had a clearly established right to be free from strip searches[6] not founded on reasonable suspicion that contraband might be found.[7] We therefore proceed to the third step of the analysis: whether Foster could reasonably have believed the strip search to be lawful.[8]
 
 IV.
 
 12
 We conclude Foster is entitled to qualified immunity because she could reasonably have believed the search was founded on reasonable suspicion even if it was not.[9] See Romero, 931 F.2d at 627 (an officer is entitled to qualified immunity if she "could reasonably have believed that [her] ... conduct was lawful").
 
 
 13
 "A reasonable suspicion exists when the person responsible for the search is aware of specific articulable facts, and inferences from those facts, which reasonably warrant a suspicion that evidence will be uncovered." Kirkpatrick, 803 F.2d at 490. "The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.' " United States v. Sokolow, 490 U.S. 1, 7 (1989) (citation omitted). Rather, we must look to " 'the totality of the circumstances--the whole picture.' " Id. at 8 (citation omitted). "[R]easonable suspicion can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 110 S.Ct. 2412, 2416 (1990).
 
 
 14
 Foster had the following information when she authorized the strip search: A known, reliable inmate informant had reported Mrs. Martinez would be bringing narcotics to her husband; Mr. Martinez had confessed to abusing illegal drugs and was serving time for a drug-related parole violation; Mrs. Martinez had passed a small, unidentifiable object to her husband; and Mrs. Martinez had been looking around the visiting area in an extremely nervous fashion, apparently watching for prison officials.
 
 
 15
 We need not decide whether this information provided the basis for a reasonable suspicion that a strip search would uncover contraband. Foster is entitled to qualified immunity even if it did not, so long as a law enforcement officer in her position could reasonably have concluded it did. See Anderson v. Creighton, 483 U.S. 635, 641 (1987) ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and ... those officials ... should not be held personally liable."); Lindsey v. Storey, 936 F.2d 554, 559 (11th Cir.1991) ("In the same way, it is inevitable that law enforcement officers will sometimes reasonably but mistakenly conclude that reasonable suspicion is present, and these officers are protected by qualified immunity."); Id. ("Storey is protected by qualified immunity unless there was clearly no reasonable suspicion to seize the property.") (original emphasis). So long as "the facts known to [Foster] at the time of the [search] at least arguably created a reasonable suspicion," id. (original emphasis), Foster should receive qualified immunity.
 
 
 16
 Mrs. Martinez contends no reasonable officer in Foster's position could have believed she had reasonable suspicion for the strip search because, unlike Bureau, Foster did not know the source of the informant's story. But neither the Supreme Court nor this Circuit has ever held a tip from an informant known to be reliable cannot form the basis for reasonable suspicion unless the source of the informant's knowledge is also known.
 
 
 17
 In Adams v. Williams, 407 U.S. 143 (1972), the Supreme Court held a police officer, tipped by a known informant that a man seated in a car in a high-crime area late at night was carrying narcotics and had a gun at his waist, had the necessary reasonable suspicion to reach into the car and remove the gun. Id. at 144-47. The Court distinguished between an anonymous tip and a tip from a known informant: "The informant was known to [the officer] personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. " Id. at 146 (emphasis added); see also Alabama v. White, 110 S.Ct. at 2415 (distinguishing between anonymous tips and tips from known informants). Although the Adams defendant claimed "absent a more reliable informant, or some corroboration of the tip, the policeman's actions were unreasonable," 407 U.S. at 145, the Court held when, as here, "a credible informant warns of a specific impending crime," the tip carries sufficient "indicia of reliability" to justify the search, even though it does not appear the officer knows the basis of the informant's knowledge, id. at 147.
 
 
 18
 The grounds for reasonable suspicion that Mrs. Martinez was harboring contraband became even more substantial when the known informant's tip was combined with other corroborating evidence, including Mr. Martinez' history of drug use, Mrs. Martinez' nervous lookout, and the passing of an unidentifiable object by Mrs. Martinez to Mr. Martinez.[10]
 
 
 19
 Mrs. Martinez also argues a visual body cavity search was unjustified because no officer could reasonably believe she would be carrying drugs in her body cavities as opposed to a more accessible place on her person. She relies on Hunter v. Auger, 672 F.2d 668 (8th Cir.1982), in which the Eighth Circuit held:
 
 
 20
 Reasonable suspicion ... includes the requirement that prison officials have reasonable cause to believe that drugs or other contraband are concealed in the particular place they decide to search. In the context of strip searches of visitors to correctional facilities, prison officials must have reasonable grounds, based on objective facts, to believe that a particular visitor will attempt to smuggle contraband by secreting and carrying it on his person.
 
 
 21
 Id. at 675 (citation omitted).
 
 
 22
 The Hunter court recognized, however, that "reason to suspect a visitor of smuggling contraband may require a body search since the nature of the criminal activity is the concealment of contraband on the person...." Id. Since the informant indicated Mrs. Martinez was going to smuggle drugs into the prison, it was not unreasonable for Foster to assume Mrs. Martinez might hide them in one or more of her body cavities, despite Mrs. Martinez' claim that she could not reach certain areas of her body without detection. As the Supreme Court has noted, prison visitors enjoying contact visits "can easily conceal guns, knives, drugs, or other contraband in countless ways and pass them to an inmate unnoticed by even the most vigilant observers." Block v. Rutherford, 468 U.S. 576, 586 (1984) (upholding prison ban on contact visits with pretrial detainees).
 
 
 23
 As we noted in Fuller v. M.G. Jewelry, 950 F.2d 1437 (9th Cir.1991), involving a visual body cavity search conducted in February 1987, language in opinions prior to that date "suggested that a body cavity search could be justified if the official had reasonable suspicion that an arrestee was hiding 'contraband' of any sort." Id. at 1451.[11] We therefore held that in February 1987, officers aware of facts from which they could reasonably have believed a reasonable basis for such suspicion existed were "entitled to qualified immunity in connection with the body cavity searches." Id. We have been cited no authority reflecting a significant change in the state of the law between February 1987 and September 1988.
 
 V.
 
 24
 We find it "at least arguabl[e]," Lindsey, 936 F.2d at 559, that a law enforcement officer, knowing the facts Foster knew when she authorized the strip search, could reasonably have concluded she had the reasonable suspicion clearly necessary for such a search in September 1988. We therefore hold Foster was entitled to qualified immunity.
 
 
 25
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The watch commander makes all supervisory decisions in the day-to-day operation of the detention facility
 
 
 [2]
 Bureau asked his informant where he got the information. The informant told him he had overheard a conversation among a group of inmates that included Mr. Martinez. However, Bureau did not tell Foster where his informant had gotten the information, nor did Foster ask
 
 
 [3]
 Mr. Martinez was at Descanso for violating his parole by testing positive for marijuana use
 
 
 [4]
 Martinez also raised a number of state law claims not at issue here
 
 
 [5]
 Qualified immunity is a defense only to actions against officials sued for damages in their individual capacities. Larez v. City of Los Angeles, 946 F.2d 630, 640 (9th Cir.1991). This appeal does not affect any claims Mrs. Martinez may have against Foster in her official capacity, see id., nor against the County, see, e.g., Chaloux v. Killeen, 886 F.2d 247, 249 (9th Cir.1989) (county may be sued in § 1983 suit for monetary relief where allegedly unconstitutional action implements or executes official policy)
 
 
 [6]
 We use the term "strip search" to refer to a visual search of the naked body or of the naked body and body cavities
 
 
 [7]
 Neither this Circuit nor the Supreme Court has held reasonable suspicion is the appropriate standard for prison visitor strip searches, but we agree with the parties that a review of "all available decisional law," Ward v. County of San Diego, 791 F.2d 1329, 1332 (9th Cir.1986), establishes that by September 1988, a reasonable officer would have surmised she needed reasonable suspicion to carry out such a search. See Kirkpatrick v. City of Los Angeles, 803 F.2d 485, 488-89 (9th Cir.1986) (relying on prison visitor search cases from other circuits, court held strip searches of police officers must be supported by reasonable suspicion); Giles v. Ackerman, 746 F.2d 614, 615, 617 (9th Cir.1984) (strip search of arrestee accused of minor offense must be based on individualized suspicion arrestee is carrying or concealing contraband or suffering from communicable disease); see also Blackburn v. Snow, 771 F.2d 556, 562 (1st Cir.1985) (policy requiring all prison visitors to be strip searched "without any predicate requirement of individualized suspicion or showing of special and highly unusual institutional need" violates fourth amendment) (original emphasis); Thorne v. Jones, 765 F.2d 1270, 1277 (5th Cir.1985) (requiring reasonable suspicion before prison visitor can be strip searched); Hunter v. Auger, 672 F.2d 668, 674 (8th Cir.1982) (same). See generally Daugherty v. Campbell, 935 F.2d 780, 784-87 (6th Cir.1991) (discussing pre-1988 cases requiring a reasonable suspicion standard for prison visitor strip searches)
 
 
 [8]
 Mrs. Martinez contends she also had a clearly established right to choose to terminate her visit rather than submit to a strip search even when the strip search was based on reasonable suspicion. She relies on Thorne, Blackburn and Hunter. Visitors in Thorne, 765 F.2d at 1276, Blackburn, 771 F.2d at 560, and Hunter, 672 F.2d at 670, 672, were given the option of leaving rather than submitting to suspicionless strip searches. Moreover, the courts did not discuss the option as an independent right but only as a factor in determining whether the suspicionless strip searches involved were reasonable or consensual. E.g., Blackburn, 771 F.2d at 568; Thorne, 765 F.2d at 1276. Mrs. Martinez cites no case holding there was a right to leave the premises rather than undergo a strip search based on reasonable suspicion. Since no such right was clearly established when Mrs. Martinez was strip searched, Foster is entitled to qualified immunity from a suit alleging violation of that right
 
 
 [9]
 As explained below, we do not reach the district court's decision that the search was not founded on reasonable suspicion. We hold only that Foster could reasonably have believed it was
 
 
 [10]
 Although Mrs. Martinez argues the only reasonable inference from this last fact was that she had passed any drugs she was carrying so there was no point in searching her, it would not be unreasonable to infer that even if she had passed some drugs to her husband, she remained in possession of more and might attempt to pass those as well
 
 
 [11]
 The court referred to language in "[ Bell v. Wolfish, 441 U.S. 520, 559 (1979) ] (concluding that body cavity searches of prisoners were justified to guard against 'smuggling of money[,] drugs, weapons, and other contraband'); Giles, 746 F.2d at 617 (limiting body cavity searches to situations where jail officials have a reasonable suspicion that an arrestee is 'carrying or concealing contraband')." Fuller, 950 F.2d at 1451