**Steven E. BOUYE, for himself and as next friend for Arlandas J. Bouye, a minor, Plaintiff,**

v.

**Matthew W. MARSHALL, Police Officer, in his individual and official capacity, Defendant.**

**No. Civ.A. 1:99–CV–704–TWT.**

United States District Court, N.D. Georgia, Atlanta Division.

June 21, 2000.

Lucinda Perry, Office of Lucinda Perry, Douglasville, GA, for plaintiff.

David Frank Root, Erika Kohler Hutt, Webb Carlock Copeland Semler & Stair, Atlanta, GA, for defendant.

## ORDER

THRASH, District Judge.

This civil rights action is brought pursuant to 42 U.S.C. § 1983. At issue is the alleged illegal search and seizure of Plaintiff Steven Bouye by an off-duty officer of the Gwinnett County Police Department. The case is before the Court on Defendant Marshall's Motion for Summary Judgment [Doc. 30]. For the reasons set forth below, the Court will grant Defendant's motion.

### I. BACKGROUND

Plaintiff Steven Bouye brings this action on behalf of himself and his minor son, Arlandas Bouye. Defendant Marshall is a police officer employed by the Gwinnett County Police Department. The allegedly illegal search and seizure occurred in the parking area of an apartment complex where Officer Marshall was working as an off-duty security officer. Plaintiffs claim deprivations of their Fourth and Fourteenth Amendment rights, and also assert various state tort law claims.

Plaintiffs allege that Officer Marshall performed an unlawful search and seizure of Mr. Bouye during an investigatory stop in November, 1997. At the time, Officer Marshall was working off-duty as a security officer for the Treehouse Apartments in Norcross, Georgia. Officer Marshall had been working as a security officer at the apartments for seven to nine months, patrolling the apartments after his shift ended with the police department. According to Officer Marshall's testimony, the Treehouse Apartments is a high-crime area due to the frequency of theft and breaking into automobiles. Officer Marshall testified that these crimes occurred weekly, and that at least 50 cars had been stolen, broken into, or vandalized since he had been working at the apartments.[1] Several cars

had been broken into the week of the incident in question.

Early in the morning of November 14, 1997, Officer Marshall received a page from his answering service for the Treehouse Apartments. Officer Marshall returned the page and obtained the name and number of an apartment resident who had witnessed someone breaking into his vehicle. Officer Marshall called the resident and was told that the perpetrator fled in a red car of an unidentified model. Later that morning, about 4:00 a.m., Officer Marshall began patrolling the Treehouse Apartments complex. Around 5:00 a.m., still in the dark of a winter night, Mr. Bouye drove into the parking lot of the apartments in his black Toyota 4–Runner sport utility vehicle. Mr. Bouye was taking his six year old son to the babysitter before going to work at the Atlanta Federal Penitentiary. Officer Marshall noticed the vehicle enter the apartment complex. Not recognizing the vehicle as belonging to a resident, and thinking it an unusually early hour for most legitimate activity, the officer followed Mr. Bouye's vehicle through the parking lot.

Officer Marshall testified that he observed the vehicle hastily pull into a parking space near one of the buildings. Officer Marshall then watched as both the driver and passenger exited the vehicle, leaving on the headlights. Because Officer Marshall was parked 25 feet away, up an incline, he could not clearly see the passenger when the occupants exited the vehicle. The passenger was Mr. Bouye's six-year old son being escorted to his babysitter's apartment by Mr. Bouye. Although Officer Marshall testified that the two individuals ran behind the building, Mr. Bouye contends he walked at a normal pace, hand in hand with his son, following the sidewalk to the babysitter's apartment. The sidewalk curved around the corner of the

1. Plaintiff denies many of Defendant's Statement of Undisputed Facts on the basis that Defendant has not substantiated the assertion. [Doc. 33, Response to Statement of Undisputed Facts]. Most of these denied statements arise from Defendant's sworn testimony in deposition. As Plaintiff has offered no evidence to refute this testimony, it is deemed to be undisputed.

building out of Officer Marshall's line of sight. According to Officer Marshall, he developed at that point a reasonable articulable suspicion that criminal activity was occurring or about to occur. He based his determination on the suspicious parking and exiting of the vehicle by its occupants, the time of day, an unfamiliar vehicle, a prior break-in of a car that night, and the high rate of crime in the apartment complex.

Officer Marshall pulled up and parked close to Mr. Bouye's vehicle and got out to investigate. After radioing in the vehicle's tag number, Officer Marshall approached the vehicle to see if anyone remained inside the truck. Finding no one inside, Officer Marshall walked down the sidewalk toward the corner rounded by the Bouyes. At that point, he suddenly encountered Mr. Bouye face-to-face returning to his vehicle. Officer Marshall pointed both his flashlight and gun at Mr. Bouye, identified himself as a police officer, and commanded Mr. Bouye to put his "f___ing hands up." [2] (Bouye Dep., p. 56). Mr. Bouye was wearing a black Department of Corrections jacket and cap, both of which displayed departmental symbols. Officer Marshall asked Mr. Bouye the location of his partner. Mr. Bouye responded that the other individual was his son who was now in the babysitter's apartment. Officer Marshall commanded Mr. Bouye to slowly unbutton his jacket with his left hand so the officer could see if Mr. Bouye was armed. Officer Marshall commanded Mr. Bouye to get on his knees facing away from the officer. Mr. Bouye complied. Officer Marshall then commanded Mr. Bouye to slowly remove his jacket. Mr. Bouye again complied and handed his jacket over his shoulder to the officer. Mr. Bouye testified that the officer's gun "grazed" his head when he took the jacket, although Bouye later testified that he did not know if it was the officer's gun or flashlight that touched the back of his head. (Bouye dep., pp. 60, 64). Officer Marshall then

commanded Mr. Bouye to place his hands behind his head. Mr. Bouye said that he was a federal officer on his way to work. Once Officer Marshall determined that Mr. Bouye was unarmed and not committing a crime, he released Mr. Bouye and told him that he was free to go. Mr. Bouye then asked for Officer Marshall's badge number. Officer Marshall went to his patrol car and got a card which he gave to Mr. Bouye. It is undisputed that the encounter lasted approximately three minutes. Part of the encounter was witnessed by Mr. Bouye's son from the babysitter's apartment window. According to Mr. Bouye, the incident and ensuing distress caused him to miss two weeks of work and required psychological treatment for himself and his son.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

Plaintiffs claim that Officer Marshall violated their constitutional rights giving

**2.** Officer Marshall denies using any profanity. Of course, at summary judgment the Court must construe disputed facts in Plaintiffs' favor.

rise to liability under 42 U.S.C. § 1983. Plaintiffs also assert state tort claims of false imprisonment, assault and battery, and intentional infliction of emotional distress. Plaintiffs have voluntarily dismissed Defendant Gwinnett County Police Department, and the Court earlier dismissed Plaintiffs' claims against Gwinnett County [Doc. 16].

## A. FEDERAL CLAIMS

■ The gravamen of Plaintiffs' claims is that Officer Marshall violated their constitutional rights guaranteed by the Fourth Amendment, as enforced by 42 U.S.C. § 1983. They have brought suit against Officer Marshall in his official and individual capacities. Suits brought under Section 1983 against individuals in their official capacities are equivalent to bringing suit against the entity. *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991). Thus, Plaintiffs' official capacity claims against Officer Marshall fell with the dismissal of their claims against the County. To establish a § 1983 liability against Officer Marshall in his individual capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Plaintiffs allege deprivations of Mr. Bouye's right to be free from unreasonable searches and seizures of his person guaranteed by the Fourth and Fourteenth Amendments. Plaintiffs also allege deprivations of both Mr. Bouye and his son's right not to be deprived of life, liberty or property without due process of law guaranteed by the Fourteenth Amendment. Officer Marshall contends that qualified immunity shields him from liability in his individual capacity.

Section 1983 provides a private cause of action for persons whose rights under the federal constitution have been violated under color of state law. *See* 42 U.S.C. § 1983. The statute confers no substantive rights itself. Instead, it provides "a method of vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To establish a Section 1983 violation, Plaintiffs must show (1) conduct committed by a person acting under color of state law (2) that deprived them of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Duke v. Massey,* 87 F.3d 1226, 1231 (11th Cir.1996).

■ In response to these claims, Officer Marshall raises the affirmative defense of qualified immunity. "Qualified immunity shields government officials executing discretionary responsibilities from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Courson v. McMillian,* 939 F.2d 1479 (11th Cir.1991) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity is a question of law to be decided by the Court. The test for qualified immunity is one of "objective-reasonableness" in evaluating the conduct of the government official claiming its protection. "[A]ll but the plainly incompetent or those who knowingly violate the law" find protection in qualified immunity. *Id.* (*citing Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

■ In *Rich v. Dollar,* 841 F.2d 1558 (11th Cir.1988), the Eleventh Circuit adopted a two-part analysis for assessing the qualified immunity defense. First, the defendant public official must prove that he acted within the scope of his discretionary authority when the challenged conduct occurred. If the defendant satisfies this part, the burden shifts to the plaintiff to show that the defendant public official's conduct violated clearly established law. *Id.* "That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." *Lassiter v. Alabama A & M Univ., Bd. of*

*Trustees,* 28 F.3d 1146, 1149 (11th Cir. 1994) (*en banc*) (citations and emphasis omitted); *Redd v. City of Enterprise,* 140 F.3d 1378, 1382 (11th Cir.1998).

Neither party addressed in their briefs the issue of whether Officer Marshall, while off-duty, was acting within his discretionary authority as an officer of the Gwinnett County Police Department. A defendant acts under color of state law by "acting with power possessed by virtue of the defendant's employment with the governmental entity." *Edwards v. Wallace Community College,* 49 F.3d 1517, 1522 (11th Cir.1995). Government employment alone, however, is insufficient. "The dispositive issue is whether the official was acting pursuant to the power [he] possessed by [government] authority or acting only as a private individual." *Id.* at 1523. Although Marshall was working as a security guard at the apartment complex, he may be considered a state actor for purposes of § 1983 individual liability if his acts were related to the performance of his police duties and were carried out pursuant to authority conferred by the state. *See West v. Atkins,* 487 U.S. 42, 49–50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ("It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State ... [either] while acting in his official capacity or while exercising his responsibilities pursuant to state law."); *Traver v. Meshriy,* 627 F.2d 934, 937–38 (9th Cir.1980) (an off-duty police officer working as a security teller pursuant to the police department's secondary hiring program, whose primary duty in the event of a crime was to the department rather than the bank, acted under color of law when he detained a customer); *Penn v. City of Miami,* 1999 WL 1050059, *13 (S.D.Fla.1999). Here, Officer Marshall was wearing his police sweatshirt and bullet-proof vest, and displayed his badge, the ultimate symbol of his authority as a police officer. Moreover, he was performing a police function in patrolling the apartment complex and investigating suspicious behavior. He used his authority as a police officer to detain and search Mr. Bouye. His actions were not those of a purely private citizen. For these reasons, Officer Marshall was acting under color of state law, and within his discretionary authority granted under state law, when he effectuated the allegedly unlawful seizure of Mr. Bouye. Consequently, Officer Marshall may be subject to § 1983 liability only if Plaintiffs can prove that he violated a clearly established law or right from the point of view of an objective officer. *See Evans v. Hightower,* 117 F.3d 1318, 1320 (11th Cir.1997).

Having established that Officer Marshall was acting within the scope of his discretionary authority as a state actor, the burden shifts to Plaintiffs to demonstrate that Officer Marshall violated clearly established constitutional law. *See Sims v. Metropolitan Dade County,* 972 F.2d 1230, 1236 (11th Cir.1992). To overcome qualified immunity, Plaintiffs must show that: (1) Marshall violated a federal constitutional right; and (2) the right was clearly established at the time of the violation. *See Santamorena v. Georgia Military College,* 147 F.3d 1337, 1342 (11th Cir.1998). Mr. Bouye alleges that his seizure and search were unconstitutional. To escape summary judgment, Mr. Bouye must show that the officer violated the Fourth Amendment's prohibitions against unreasonable seizures. Whether the seizure was unreasonable is determined by the objective-reasonableness test of the Fourth Amendment. The question turns on whether the officer's actions were objectively reasonable under the facts and circumstances as they existed at the relevant time. Thus, allegations of malice or evil intent bear little weight. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham,* 490 U.S. at 397, 109 S.Ct. 1865. The legality of the officer's conduct is judged by balancing its intrusion on the

individual's Fourth Amendment interests against its promotion of legitimate, governmental interests. *Id.*

■ Officer Marshall's investigatory stop of Mr. Bouye was lawful. The search and seizure consisted of a brief pat-down of Mr. Bouye's jacket and visual scan of his waistline for weapons. The officer had a reasonable suspicion of illegal activity aroused by the reports of the prior break-in of a car that night in the apartment complex, the high crime rate in the area, the early time of day, the unfamiliar vehicle, and the hastily parked car left with the lights on by both occupants. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Moreover, the brevity of the investigatory stop—about three minutes—further contributes to the reasonableness of the intrusion. If the search is brief and minimally intrusive, only "reasonable suspicion" as outlined in *Terry* is required to justify the search and seizure as "reasonable" under the Fourth Amendment. *Lindsey v. Storey,* 936 F.2d 554, 558 (11th Cir.1991). Thus, Officer Marshall is entitled to qualified immunity unless he *clearly* lacked the reasonable suspicion necessary to justify the search. "As a result, more is required than a mere hindsight determination of whether reasonable suspicion actually existed at the time of the seizure." *Id.* at 559. Here, Officer Marshall is entitled to qualified immunity because the facts known to him at the time of the search and seizure at least *arguably* created a reasonable suspicion of criminal activity. *Compare Penn v. City of Miami,* 1999 WL 1050059, *18 (S.D.Fla.1999). Accordingly, Officer Marshall is entitled to summary judgment as to the constitutional claims brought by Mr. Bouye.

Marshall is also entitled to summary judgment for the due process claims brought by Mr. Bouye and his son. Plaintiffs fail to explain how Defendant Marshall's alleged search and seizure of Mr.

Bouye denied his son due process of law. Moreover, Plaintiffs offer no evidence of any denial of due process suffered by Mr. Bouye. Both due process claims are without, and Defendant Marshall is entitled to summary judgment with respect to these claims.[3]

## B. STATE LAW CLAIMS

■ Plaintiffs also allege that Officer Marshall committed the torts of false imprisonment, assault and battery, and intentional infliction of emotional distress. Officer Marshall contends that either sovereign or qualified immunity shields him from Plaintiffs' state law claims. Under English common law, the government was cloaked with sovereign or governmental immunity, but public officials and employees were personally liable for torts they committed in the performance of their duties. *Gilbert v. Richardson,* 264 Ga. 744, 752, 452 S.E.2d 476 (1994). Over the years, however, the law in this country has tended towards the converse. Consequently, qualified or official immunity for public officials and employees has developed. The doctrine of official immunity developed in Georgia primarily through case law. *Id.* Official immunity provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are willful, wanton or outside the scope of his authority. *See* O.C.G.A. § 36–33–4; *Hennessy v. Webb,* 245 Ga. 329, 331, 264 S.E.2d 878 (1980); R. Perry Sentell, *Individual Liability in Georgia Local Government Law: The Haunting Hiatus of Hennessy,* 40 Mercer L.Rev. 27 (1988).

In 1991, the immunity enjoyed by public officers and employees was made part of the Georgia Constitution. Subsection (d) of the 1991 amendment states:

---

3. Plaintiffs argue in their Brief in Support of Motion to Compel and Request for Attorneys Fees [Doc. 22] that they have stated a claim for excessive force. Upon reviewing the Complaint, the Court finds no allegations which could reasonably be construed as giving notice of a claim of excessive force.

Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with *actual malice or with actual intent to cause injury* in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

Ga. Const., Art. I, Sec. II, Par. IX(d) (emphasis added). According to the amendment's plain language, state officers and employees, and those of its departments and agencies, are subject to suit only when they negligently perform or fail to perform their "ministerial functions" or when they act with actual malice or intent to cause injury in the performance of their "official functions." *Gilbert*, 264 Ga. at 752, 452 S.E.2d 476. An officer's decision to investigate and perform a search constitutes a discretionary act taken as part of an official function. *Id.* at 752–53, 452 S.E.2d 476. Thus, under Georgia law, Officer Marshall is entitled to official immunity for discretionary acts taken during the course and scope of his employment unless such acts are willful, wanton and outside the scope of his authority. *See Hennessy*, 245 Ga. at 329, 264 S.E.2d 878. Even gross negligence will not suffice to impose liability for discretionary official acts. *Id.*

■ Here, it is undisputed that Officer Marshall was acting within the course and scope of his employment in his official capacity as a Gwinnett County police officer. Further, Plaintiffs have presented no evidence that Officer Marshall acted willfully or wantonly or outside the scope of his authority. "A police officer is autho-

rized to make a brief, investigatory detention of an individual where the intrusion can be justified by specific, articulable facts giving rise to a reasonable suspicion of criminal conduct." *Stewart v. State*, 227 Ga.App. 659, 660, 490 S.E.2d 194 (1997). Because no evidence exists from which a reasonable juror could find that Officer Marshall acted with actual malice or intent to cause injury, he is clothed with official immunity. Accordingly, Officer Marshall is entitled to summary judgment on Plaintiffs' state law claims.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment [Doc. No. 30]. The Clerk is directed to enter final judgment in favor of the Defendant and close this case.